Argued June 3, modified and remanded June 27, 1974

ZERR ET UX, *Respondents, v.* HECETA LODGE
NUMBER 111, INDEPENDENT ORDER
OF ODD FELLOWS, *Appellant.*

523 P2d 1018

*Charles M. Gudger, III,* Eugene, argued the cause for appellant. With him on the briefs were Bick, Monte & Joseph, Eugene.

*Sam B. Harbison,* Medford, argued the cause for respondents. With him on the brief were Harbison, Kellington & Kellington, Medford.

Before O'CONNELL, C. J., and McALLISTER, DENECKE, TONGUE, HOWELL* and BRYSON, Justices.

TONGUE, J.

This is an action to recover the possession of real property to compel, by writ of restitution, the

---

* Howell, J., did not participate in this decision.

removal of an adjacent building owned by defendant to the extent that it encroaches upon plaintiffs' property.

Defendant's answer alleged various equitable defenses, including the defense that equity should deny plaintiffs' request for removal of the encroachment because to do so would impose upon defendant a "disproportionate burden." Defendant's answer also alleged the defenses of estoppel, reformation and rescission. In addition, defendant contends that a writ of restitution is not a proper remedy to compel the removal of an encroachment.

The entire case, including the equitable defenses, was tried before the court without a jury as in a suit in equity, apparently with the complete acquiescence of both parties. The trial court then entered general findings and conclusions to the effect that "defendant has failed to prove any of its affirmative defenses by a preponderance of evidence" and that plaintiffs were entitled to immediate possession of all of the real property denied by it. The court then ordered the issuance of a writ of restitution "removing defendant" from plaintiffs' property and awarded plaintiffs nominal damages for past encroachments in the sum of $10. Defendant appeals.

*The facts.*

Plaintiffs' predecessor, Mr. Charnstrom, owned Lots 9, 10, 12 and 13 of Block 5 in Florence. Lot 11 was owned by defendant. Defendant had previously owned Lots 11, 12 and 13 and had leased Lots 12 and 13 to Mr. Charnstrom. Later it sold these lots to him. Mr. Charnstrom had a building known as Fisherman's

Wharf on Lots 12 and 13. Defendant's lodge building was on Lot 11. Lots 9 and 10 were vacant.[1]

Bay Street

In 1969 Mr. Charnstrom was considering the construction of a building on Lots 9 and 10. He then hired a surveyor, a Mr. Worthington, to survey the boundary line between Lots 10 and 11. Upon making that survey, Mr. Worthington discovered that defendant's lodge building encroached five feet upon the east side of Lot 10.

There is some conflict in the testimony as to what then happened. According to Mr. Charnstrom, he either was never told by Mr. Worthington or "did not recall" whether Mr. Worthington told him that he (Mr. Worthington) had "found out" in the course of the survey that the Fisherman's Wharf building

[1] The following map is based upon exhibits in evidence.

(owned by Mr. Charnstrom) was also encroaching five feet on Lot 11 (owned by defendant). He did testify, however, that Mr. Worthington told him that "according to his figures * * * the whole block, they were all over too far west four feet" and that "my building [Fisherman's Wharf] was four feet over." Mr. Charnstrom also testified that he was told by Mr. Worthington that defendant "wanted" or was "willing to trade the four feet on the east side for the four feet on the west side and asked me if that was all right"; that he said that this was "all right with him"; that either he or Mr. Worthington then "made out all the papers and recorded them as deeds" and "that's the way the deal was settled." Mr. Charnstrom testified that he had no conversation with defendant, but "did that according to what Mr. Worthington suggested I do." However, the two deeds prepared following these conversations each conveyed a five-foot strip, rather than a four-foot strip, as testified by Mr. Charnstrom to be his understanding.

According to one of defendant's officers, however, both Mr. Charnstrom and Mr. Worthington had a conversation with him at the time of the survey on the sidewalk at a point between defendant's lodge building and the Fisherman's Wharf building; that there was then a yellow mark on the sidewalk at that point; that they told him that "they had found a discrepancy in the line" (between the defendant's lodge building and the Fisherman's Wharf building); that he "kidded" Mr. Charnstrom "about his kitchen over our property," and that Mr. Charnstrom said "If it's over the line, let's get together and straighten the thing up." This witness also testified that Mr. Worthington later "brought the deeds over" and "asked us if we

would sign ours and then Mr. Charnstrom would sign the other one, and it would all be straightened up"; that the deed was then signed (conveying to Mr. Charnstrom the five-foot strip) and was delivered to Mr. Charnstrom. Another witness, also one of defendant's officers, testified that "we relied on that survey and signed the deeds, and all in good faith."

Mr. Worthington, the surveyor, did not testify and it does not appear whether he was available to do so. An engineer engaged subsequently by defendant testified, however, that he had "studied" Mr. Worthington's survey; that it "showed that the * * * Odd Fellows building and the Fisherman's Wharf building were not on their respective lots," and that Mr. Worthington apparently "concluded it would be necessary to exchange five-foot parcels between the Lodge and Mr. Charnstrom to correct that." He also testified that Mr. Worthington's survey was correct "along the front of the building," but that "the chances are that he did not investigate [the] side of [defendant's] building enough to find out that the building was not sitting square on the lot."

This engineer also testified that although Mr. Worthington apparently "set out to correct the boundary lines to the building lines," and "did that correctly as far as the front of the buildings," he did not do that correctly "in the back," where defendant's building extended approximately nine inches farther to the east and that, as a result, defendant did not convey to Mr. Charnstrom the proper amount of property to "line up their building with the correct line," but "conveyed too much property on one side."

In addition, this engineer testified that the new "line" between defendant's lodge building and the

Fisherman's Wharf building did not consider the fact that the lodge building also leaned toward the east and that its eaves extended further to the east toward the Fisherman's Wharf building.

Subsequently, in 1969, Mr. Charnstrom sold to plaintiffs both Lots 9 and 10 and also Lots 12 and 13, together with the east five feet of Lot 11. Plaintiff Raymond Zerr testified that he had asked Mr. Charnstrom about the deed to the five-foot strip and was told that the Fisherman's Wharf building had encroached on defendant's property and that defendant had given to him a deed for the five feet to settle that problem so that his building would not encroach upon defendant's land.

As time went on plaintiffs noticed that defendant's building seemed to have "shifted" and to be "leaning." They then had a survey made of the boundary line between their property and defendant's property. That survey was made in 1972 and revealed for the first time that although the front corner of defendant's lodge building (the southeast corner) was "right on the line," as established by defendant's deed granting to plaintiffs' predecessor a five-foot strip along the east side of Lot 11, the back (northeast) corner of defendant's building extended nine inches over that line. It also "bulged" slightly to the east in the middle.

It appears from the evidence that over the years defendant's building has leaned toward the east to the extent that the top of the front corner of the building is approximately three inches over the boundary line, with a corresponding "lean" at the rear corner. In addition, the eaves of defendant's building extend

15 inches over the line at the front (southeast) corner of the building and two feet (or 24 inches) over the line at the back (northeast) corner of the building.

There was also evidence that as the result of this "leaning" the defendant's building is exerting pressure upon plaintiff's building. Plaintiff Raymond Zerr testified that, in his opinion, the value of the Fisherman's Wharf business has been "devaluated" in the sum of $10,000 by the fact that defendant's building is leaning on it.[2]

Evidence was offered by plaintiffs from which it appears that defendant's building, although an old structure of frame construction, could be jacked up so as to "take the lean out of it" at a cost of less than $3,000. No evidence was offered by either party to show whether or not, as a practical matter, the building could be moved to another site and, if so, at what expense.

*Plaintiffs are not entitled to either a writ of restitution or to a mandatory injunction under the facts of this case.*

As previously stated, the trial court found that defendant failed to prove any of its affirmative defenses by a preponderance of the evidence. Proof of the various elements required to establish the defenses of estoppel, reformation and rescission depend upon the proof of facts as to which there was some conflict in the testimony. There is also some disagreement upon the law relating to the application of such defenses.

---

[2] Evidence was also offered that water from the eaves of defendant's building had caused the corner part of the adjacent portion of plaintiffs' building to become rotten, requiring repairs costing $1,200. No contention, however, is made by plaintiffs in their brief with reference to that evidence.

We shall assume, however, for the purposes of this case that the trial court was correct in finding that such defenses were not established. It does not follow, however, that plaintiffs were entitled to the relief demanded by them.

We need not decide in this case whether a mandatory injunction, as in a suit in equity, rather than writ of restitution, as an action at law, is the only appropriate remedy to remove a partial encroachment by a building under facts such as those presented in this case.[9] Both parties acquiesced to the trial of all of the issues of this case, including those arising from plaintiffs' complaint, before the trial court without a jury as in a suit in equity. No contention is made by either party on this appeal that any issues arising from the complaint should be considered any differently than the issues resulting from defendant's equitable defenses. Therefore, we shall consider all of the issues raised on this appeal as in a suit in equity, subject to a de novo review by this court, including the direction of such remedies as appear to be required under the facts of this case.

Plaintiffs' brief seems to concede that the equitable defense of "disproportionate burden" may be a defense in such a case as this, depending, of course, upon the facts proved. Thus, plaintiffs say that:

> "In deciding whether to issue, or not to issue, an order to remove an encroaching structure equity may weigh the benefits and burdens resulting to the parties litigant and deny to issue such order

---

[9] See Dobbs on Remedies 357, § 5.6 (1973); Annot., 28 ALR2d 679, 694, § 5 (1953); Norton v. Elwert, 29 Or 583, 592-93, 41 P 926 (1895). See also McKee v. Fields, 187 Or 323, 326, 210 P2d 115 (1949), and ORS 105.005.

if the resulting damage to the Defendant greatly exceeds the resultive benefit to Plaintiff."

Plaintiffs also propose that the following test be applied in deciding this question, quoting from *Tauscher v. Andruss,* 240 Or 304, 308, 401 P2d 40 (1965), as follows:

"There being an encroachment, plaintiffs are entitled to a mandatory injunction ordering the removal unless it would be inequitable to require such removal. Under the proper circumstances the court will consider the relative hardship of the parties and if the removal of the encroaching structure would cause damage to the defendant disproportionate to the injury which the encroachment causes plaintiff, an injunction will not issue.

"It is not enough for the defendants to show that their damage will outweigh the plaintiffs' benefit; they must go further and show that their damage would be great and the plaintiffs' benefit would be relatively small. Since the defendants are in effect asking the court to recognize a kind of eminent domain for private purposes, the disproportion between their damage resulting from the removal of the encroachment and the plaintiffs' damage if the injunction is denied must be great."

Defendant agrees that this is the proper test for application in this case. See also Annot., 28 ALR2d 679, §§ 6, 7 and 9 (1953); Dobbs on Remedies 355-57, § 5.6 (1973); and Restatement of Torts § 941 (1939). See also *Winthers v. Bertrand,* 239 Or 97, 100, 396 P2d 570 (1964). Cf. *Trunnell et al v. Tonole et al.,* 104 Or 628, 631, 208 P 583 (1922); *Jensen v. Probert,* 174 Or 143, 160, 148 P2d 248 (1944); and *Frankland v. City of Lake Oswego,* 267 Or 452, 477-480, 517 P2d 1042 (1973).

It is contended by plaintiffs, however, after reviewing the testimony, that defendant produced no

evidence "that its building could not be removed from the plaintiffs' real property" and "failed to prove that its burden of removal of its building would greatly exceed the benefit thereby resulting to plaintiffs * * *," but that defendant's own evidence (that its building leans upon plaintiffs' building) "helped to show that its building constitutes a continually increasing encroachment upon plaintiffs' property." Plaintiffs conclude with the contention that:

> "To deny Plaintiffs their rights in this matter would be tantamount to requiring a building owner, after his neighbor's buildings have leaned across a passage into his own building and pushed it out of plumb, to provide his neighbor's collapsing building with perpetual lateral support."[1]

■ We agree that plaintiffs are entitled to relief against what appears to be the increasing pressure exerted upon their building as a result of the "leaning" of defendant's building against it. According to the evidence, this pressure can be removed by jacking up defendant's building, at an estimated cost of less than $3,000. Defendant should be required to do so.

■ We also agree that to the extent that the eaves of defendant's building overhang the east edge of that building, defendant should be required to remove the eaves. See Annot., 28 ALR2d 679, 742, § 21 (1953).

The more difficult problem, however, is whether defendant should be required to remove the encroachment by the east side of its building upon plaintiffs'

---

[1] Similarly, plaintiffs' "summary of argument" in its brief on this appeal was as follows:

"Defendant mainly bases its appeal on four assignments of error, none of which have been proved. Plaintiffs should not be required to furnish lateral support to Defendant's leaning building."

land. As previously stated, while there is no such encroachment at the front (or southeast) corner of the building, which is "on the line," there is an encroachment of approximately nine inches at the back (or northeast) corner of the building. Also, between these two points, the side of the building "bulges" slightly.

Defendant offered no evidence to show that it would be impossible to move the building to another lot or what the cost of doing so would be. We believe it to be clear from the evidence, however, that such a cost would be very substantial, particularly when compared with what appears from the evidence to be the damage caused to plaintiffs' property by that encroachment, assuming that the building has been jacked up and its eaves removed.

In this case, in addition to asking for the issuance of a writ to require the removal of the encroachment, plaintiffs asked for $10,000 in damages for defendant's wrongful withholding of possession as a result of that encroachment. The trial court apparently found that plaintiffs had failed to prove that it had suffered any substantial damages and awarded only $10 as nominal damages. After reviewing the record, we agree with that finding.

Because plaintiffs failed to prove that they suffered any substantial past damages as a result of the encroachment, we believe that it follows that plaintiffs can hardly claim that they would suffer any substantial future damages as a result of the encroachment, particularly if defendant's building is jacked up and the eaves removed. For the same reasons, we believe that plaintiffs have failed to show that they would

receive any substantial benefit from the removal of the encroachment by defendant's building beyond such benefit as will result to them from the jacking up of the building and the removal of its eaves.

In other words, we believe that this is a case in which the damage to defendant not only "outweighs" both plaintiffs' damages and plaintiffs' benefit, but that defendant's "damage would be great and the plaintiffs' benefit would be relatively small," within the meaning of the test proposed by both parties and as stated in *Tauscher v. Andruss, supra.*

In addition, we believe that this is a proper case for consideration of the relative hardship to defendant if removal is compelled because defendant acted in complete good faith in this case and because plaintiffs' predecessor was primarily responsible for the problem. Cf. Dobbs on Remedies 355-56, § 5.6 (1973), and Restatement of Torts § 941, Comment *b* (1939). It may be that the conduct of plaintiffs' predecessor was not such as to estop either him or the plaintiffs. Nevertheless, plaintiffs' predecessor was primarily responsible for the exchange of deeds, including the preparation of the description in the deed by which defendant conveyed away more property than enough to accomplish the obviously intended purpose of establishing a boundary line in accordance with the actual line between the two buildings. Cf. *Reisland v. Schick et al.,* 111 Or 42, 49, 224 P 827 (1924). Defendant relied in good faith upon plaintiffs' predecessor to prepare a deed with such a description as could properly accomplish that intended purpose.

For these reasons, we hold that plaintiffs are not entitled to demand the moving or removal of de-

fendant's building, whether by writ of restitution or by mandatory injunction. As stated, however, by Dobbs, *supra* at 356:

> "* * * Where the hardship is deemed sufficient to justify refusal of the injunction, the defendant, on payment of damages, acquires either a fee or an easement in the land on which the structure encroaches, but if the plaintiff wishes, the interest should be limited to an easement so that the plaintiff can recover the land should the encroachments be removed."

Plaintiffs recognized the problems resulting from defendant's affirmative defense of "disproportionate burden" in proposing a test to be applied in determining whether or not that defense should be allowed or denied, including the recognition of "a kind of eminent domain for private purposes" that would be the result of the denial of a mandatory injunction in such a case.[5]

Plaintiffs have offered no evidence, however, from which this court can determine the amount, if any, which should be paid to plaintiffs in the event that the court declined to order the moving or removal of the building, other than the evidence offered by plaintiffs to sustain their demand for past damages for the withholding of possession of the land subject to the encroachment. Neither have plaintiffs indicated whether, in such an event, the interests of the defendant should be limited to that of an easement.

Under the circumstances of this case, however, we hold that defendant's interest in plaintiffs' land

---

[5] The test proposed by plaintiffs in their brief, which included the quotation from Tauscher v. Andruss, 240 Or 304, 308, 401 P2d 40 (1965), as set forth above, expressly recognizes the eminent domain aspects of the application of such a rule. See also Restatement of Torts § 941, Comment *d* (1939).

should be limited to that of an easement, so that plaintiffs can recover full use and possession of this small strip of land if and when defendant's present building is removed, torn down, or replaced by another building. We also hold that under these circumstances, and because the trial court found that plaintiffs had suffered no substantial past damages as a result of the encroachment by defendant's building, other than nominal damages, a similar and additional award in the sum of $10 is appropriate to compensate plaintiffs for such an easement by payment for any future damages resulting from the small encroachment by defendant's building after it has been jacked up and its eaves removed.

For all of these reasons, the decree of the trial court shall be modified in accordance with this opinion and the case shall be remanded to the trial court for entry of a final order, judgment and decree not inconsistent with this opinion.

Modified and remanded, with costs to neither party.