[No. 17143-4-III.    Division Three.    April 13, 2000.]

MILTON HANSON, ET AL., *Respondents*, v. KAREN ESTELL,
ET AL., *Appellants*.

*Frank C. King*, for appellants.
*Milton A. Hanson* and *Roberta K. Hanson*, pro se.

SCHULTHEIS, J. — For about five years Karen and Daniel Estell have been wrangling with neighbors Milton and Roberta Hanson over a 15- by 307-foot strip of land between their two properties. The Hansons won a prescriptive easement over this Estell-owned property. After the Estells tried to block access to the easement with a fence, the Hansons sued again, for contempt, violation of a court order, injunctive relief and other causes. All of the Hansons' claims were dismissed on summary judgment, but the Estells' counterclaims for trespass, frivolous lawsuit and an injunction went to a bench trial. The Estells lost on all three counterclaims and now appeal, contending (1) the Hansons clearly prosecuted their claims maliciously; (2) the Estells are entitled to an injunction ordering the removal of the Hanson barn that encroaches on the easement by one foot; and (3) the trial court erred in awarding attorney fees. We affirm all but the award of attorney fees and reverse that portion of the judgment.

In 1980 the Hansons bought several acres of farmland in Otis Orchards. At that time, they had a small barn along the boundary of the property where they boarded and trained racehorses. The barn burned to the ground in 1991 and the Hansons hired a contractor to build a new one on the same site in 1992. A Spokane County building inspector examined the apparent property line and approved construction of the new barn as properly set back. The previous owner of the Estell property—Leola Taylor—commissioned a survey that revealed one corner of the new barn encroached on her land 1 foot, diminishing to 0 inches over about 22 feet of Ms. Taylor's property. She objected to the unauthorized use of her property, but did nothing further.

In 1993 Ms. Taylor sold her property to the Estells. They bought knowing that the Hanson barn encroached on their land but did not object at the time because they felt "the one foot really didn't seem to be that big of an issue." On the other hand, the Estells were not happy that the Hansons drove over Estell property to get to their horse barn. The Estells put up a fence across the corner of their property that was being used by the Hansons. They also contacted the county building department, which wrote the Hansons that their barn did not comply with building regulations. In response, the Hansons brought suit against the Estells in 1993 for adverse possession, trespass, prescriptive easement and intentional infliction of emotional distress. All but the claim for prescriptive easement were later dismissed on summary judgment. The Hansons eventually obtained a prescriptive easement to a strip 15 feet by 307 feet along the Estell boundary. The easement, granted in 1996, provided for mutual use, including such uses as ingress and egress to the Hanson barn, pens and pastures to feed stock. The order also proscribed either party from blocking the easement or parking unattended vehicles there.

A few months later, the Estells moved for contempt before the same judge who granted the easement. They argued the barn was "blocking" the easement and that it must be removed. The judge denied the motion and suggested the parties mediate future disputes. Three days later, the Estells put up another fence across the easement. The Hansons removed it and again filed suit, as well as a temporary restraining order, against the Estells.[1] This complaint, filed in September 1996, alleged contempt of court, abuse of process, violation of 42 U.S.C. § 1983 and outrageous conduct, and sought an injunction restraining the Estells from

harassment designed to annoy, torment, pester, plague, molest,

---

[1]The temporary restraining order was granted but it was never set for a hearing and eventually expired. In both the first and the second suits the Hansons also sued Spokane County, and they sued the sheriff's department and certain personnel in the second suit. These defendants were dismissed voluntarily.

worry, badger, harry, heckle, persecute, irk, bully, bullyrag, vex, disquiet, grate, bother, tease, nettle, tantalize, ruffle, assault, display obnoxious behavior or disturb the peace of the Hansons[.]

This judge apparently refused to deal with the parties again, so they appeared before a different judge in January 1997 on cross-motions for summary judgment. The second judge dismissed the Hansons' claims for contempt and abuse of process, but continued the hearing on all the other issues so the Hansons could obtain another survey. Later, the Hansons agreed to the accuracy of the Estell survey and another hearing was held in March 1997. The judge dismissed the remaining Hanson claims. He partially granted the Estells' counterclaim for trespass, based on the encroaching barn, and left the issue of damages to be determined later. The Hansons again sought dismissal of the Estell counterclaims in May 1997, but withdrew the motion later. They filed bankruptcy in July 1997 and their attorney unsuccessfully moved to withdraw in August. After the bankruptcy stay was lifted, the matter was set for trial.

Trial was held in October 1997 on the remaining counterclaims of frivolous lawsuit and malicious prosecution. The Estells also sought an injunction for removal of the barn and to build a fence, as well as damages for trespass. A third judge presided at this bench trial. After hearing the testimony of Ms. Hanson, Ms. Estell and two expert witnesses, this judge denied the claims for frivolous lawsuit and malicious prosecution, finding there were legitimate issues for the court to resolve. Because a fence would block the easement and the barn does not, the judge denied the injunction. Based on an appraiser's estimate of the value of the land encroached upon by the barn, he awarded the Estells $100 as a one-time payment for the continuing trespass. The Hansons were awarded attorney fees and costs pursuant to chapter 4.84 RCW as the prevailing party. This appeal followed.

The Hansons have not filed a respondents' brief. Accord-

ingly, they were precluded from presenting oral argument and we make our decision based on the argument and record before us. RAP 11.2; *In re Marriage of Gilbert*, 88 Wn. App. 362, 366-67, 945 P.2d 238 (1997) (citing *Adams v. Department of Labor & Indus.*, 128 Wn.2d 224, 229, 905 P.2d 1220 (1995)).

■ The Estells first contend the trial court erred in denying their counterclaim for malicious prosecution. They claim the record shows the Hansons instituted the present action without probable cause and with improper motives. Our review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether they support the conclusions of law. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465-66, 886 P.2d 556 (1994); *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978). Substantial evidence is that quantum sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Price*, 125 Wn.2d at 465-66.

■ At common law, an action for malicious prosecution required the plaintiff to prove (1) the defendant instituted or maintained the alleged malicious prosecution; (2) lack of probable cause to institute or continue the prosecution; (3) malice; (4) the proceedings ended on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage as a result. *Pay'N Save Corp. v. Eads*, 53 Wn. App. 443, 447, 767 P.2d 592 (1989) (citing *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 497, 125 P.2d 681 (1942)). The Legislature later abrogated the fourth element by permitting a defendant to assert a counterclaim for malicious prosecution under RCW 4.24.350. *Brin v. Stutzman*, 89 Wn. App. 809, 818-19, 951 P.2d 291, *review denied*, 136 Wn.2d 1004 (1998). Such counterclaims are permitted in the interests of judicial economy and to protect defendants from meritless attacks. *Id.* at 819.

■ Proof of probable cause is an absolute defense to a claim of malicious prosecution. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993); *Brin*, 89 Wn.

App. at 819. The Estells contend the Hansons had no probable cause to bring this most recent suit. As proof, they note that all the Hansons' claims were dismissed on summary judgment. The fact that the Hansons' claims were not successful is not determinative of the legitimacy of their arguments, however. The trial court in the instant action found their suit "neither frivolous nor brought maliciously, as there were legitimate issues" requiring resolution by the court. One of those issues was whether the Estells were in contempt of court for obstructing the easement with a fence. Another was whether the Estells abused the legal process to relitigate the resolved issues of the prescriptive easement and its use. While unsuccessfully argued, probable cause supported bringing these issues to the court.

Washington courts strictly limit the right to bring suit for malicious prosecution, "reasoning that such suits intimidate prospective litigants and that the public policy favors open courts in which a plaintiff may fearlessly present his case." *Gem Trading Co. v. Cudahy Corp.*, 22 Wn. App. 278, 283, 588 P.2d 1222 (1978), *aff'd*, 92 Wn.2d 956, 603 P.2d 828 (1979). Arguably, both parties have exhibited malice in their continuing efforts to embroil the courts in their affairs. But considering the fact that the Estells put up a fence across the easement, blocking its use, only three days after a judge denied their attempt to have the barn removed, a lawsuit to prevent future violations of the easement was preferable to other, less civilized, forms of self-help. In short, probable cause supported the Hansons' claims and defeats the claim of malicious prosecution.

The Estells next complain the $100 awarded to them as damages for trespass is inadequate to remedy what amounts to a permanent, unconstitutional taking of their land by the barn's encroachment. They argue they are entitled to a permanent injunction requiring the removal of the barn and compliance with the setback regulations of the Spokane County building code.

■ ■ Generally a mandatory injunction is the proper

remedy for an adjoining landowner who seeks to compel the removal of an encroachment. *Arnold v. Melani,* 75 Wn.2d 143, 146, 449 P.2d 800, 450 P.2d 815 (1968). Because this extraordinary injunctive relief is equitable in nature, the court may refuse to enjoin on equitable principles. *Id.* at 146-47. In particular, the court may withhold a mandatory injunction as oppressive when (1) the encroacher did not simply take a calculated risk, or negligently or willfully locate the encroaching structure; (2) the damage to the landowner is slight and the benefit of removal is equally small; (3) there is no real limitation to the property's future use; (4) it is impractical to move the encroaching structure; and (5) there is an enormous disparity in the resulting hardships. *Id.* at 152. Contrary to the Estells' argument, CONST. art. I, § 16, the eminent domain provision, does not divest a court of equity of the power to refuse a mandatory injunction when the balancing equities listed above are clearly and convincingly proven. *Id.* at 151-52.

The trial court ratified the earlier ruling that the Hanson barn encroaches on Estell property and that such encroachment constitutes trespass. The court further found, however, that damages caused by the encroachment are minimal, do not prevent the Estells from rightful use of their property within the easement, and that the first judge contemplated the barn in its present position when he granted the easement by prescription. Testimony at trial indicated the Spokane County building inspector mistakenly approved construction of the barn based on his own interpretation of the corner posts and the property line. He was surprised to discover later that a survey showed the barn encroached on the easement and he testified that the county did not plan to force removal of the barn for noncompliance. Nothing in the testimony indicates that at the time the barn was rebuilt the Hansons knew or should have known it encroached. Noting that even the Estells admit the actual damages are minimal, the judge based the $100 award on testimony from an appraiser who assessed the land's value as between $18 and $100.

■ Balancing the negligible impact of the barn encroach-

ing on the easement by one foot with the likely prohibitive costs of moving the barn, the equities support rejection of mandatory injunction, leaving the Estells to their remedy at law. *Adamec v. McCray*, 63 Wn.2d 217, 219-20, 386 P.2d 427 (1963). As in *Arnold*, the trial court properly awarded the Estells the value of the encroached land. *Arnold*, 75 Wn.2d at 146; *see also Federal Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 439, 886 P.2d 172 (1994) (the court has discretion to award damages within the range of relevant evidence).

Finally, the Estells contend the trial court erred in awarding attorney fees and costs to the Hansons pursuant to RCW 4.84.250. They contend the statute is inapplicable because it applies only to actions for damages; the Hansons also requested an injunction and obtained a temporary restraining order. Further, they contend the trial court learned of the Hansons' settlement offer before the court entered judgment, a violation of RCW 4.84.280.

The Estells, as the parties seeking relief on their counterclaim, prevailed on the issue of trespass and were awarded $100. In June 1997, the Hansons made an offer of settlement pursuant to RCW 4.84.280. The offer was served on the Estells more than 30 days after service of the summons and complaint and more than 10 days before trial, in compliance with the statute. RCW 4.84.280. The Hansons offered $200 as full settlement of any damages—past, present or future—caused by the barn's encroachment. RCW 4.84.250 provides for an award of attorney fees to a prevailing party in any action for damages where the amount pleaded is $10,000 or less. The prevailing party is the party resisting relief if the party seeking relief recovers nothing or if the recovery is the same or less than the amount offered in settlement by the party resisting relief. RCW 4.84.260. Out-of-court settlements are thus encouraged and parties are penalized when they unjustifiably bring or resist small claims. *Public Utils. Dist. No. 1 v. Crea*, 88 Wn. App. 390, 394, 945 P.2d 722 (1997), *review denied*, 134 Wn.2d 1021 (1998).

■ Both parties in this case asked for damages of an indeterminate amount. The Estells do not argue that the amount sought was more than $10,000, but that by additionally seeking injunctive relief the Hansons (and they) are not entitled to fees under RCW 4.84.250. Nothing in the statute prohibits parties from seeking other relief besides damages and this court does not so construe its requirements.

■■ One other requirement of RCW 4.84.280 is also at issue, however. The statute provides that the offer of settlement "shall not be filed or communicated to the trier of the fact until after judgment, at which time a copy of said offer of settlement shall be filed for the purposes of determining attorneys' fees[.]" RCW 4.84.280. "Shall" is generally presumed to be mandatory. *Dussault v. Seattle Pub. Schs.*, 69 Wn. App. 728, 733, 850 P.2d 581 (1993), *review denied*, 123 Wn.2d 1004 (1994). The trial court awarded the Estells $100 in its oral ruling October 31, 1997. The Hansons filed their motion for attorney fees (including a copy of the offer of settlement) on December 5, 1997, five days before the entry of judgment. During presentment of the findings and conclusions on December 10, the court indicated it had seen the offer of settlement and it was awarding attorney fees to the Hansons based on chapter 4.84 RCW. When counsel for the Estells protested that RCW 4.84.280 prohibited the court from learning of the settlement offer until after judgment, the trial court asked how the party seeking attorney fees would accomplish this task so that the fees would be part of the judgment summary. Counsel answered that he thought the judgment would always have to be amended with a supplemental judgment in order to comply with the statute.

While no Washington case directly addresses this issue, we find that the clear language of RCW 4.84.280 prohibits the trial court from learning of any settlement offers until after the judgment has been signed. A judgment, as defined by CR 54(a)(1), is "in writing and signed by the judge[.]" Washington courts have long held that "a trial judge's oral

decision is no more than a verbal expression of his informal opinion at that time. . . . and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into findings, conclusions, and judgment." *DGHI Enters. v. Pacific Cities, Inc.*, 137 Wn.2d 933, 944, 977 P.2d 1231 (1999) (quoting *Ferree v. Doric Co.*, 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963)). The Hansons filed the settlement offer before judgment. The settlement offer was also communicated to the trier of fact before judgment. For this violation of RCW 4.84.280, the Hansons are not entitled to attorney fees under RCW 4.84.250.

In summary, we affirm the decisions of the trial court that hold the Hansons did not prosecute their claims maliciously and the Estells are limited to their trespass remedy at law for the barn's encroachment. We reverse, however, the award of attorney fees pursuant to RCW 4.84-.280.

BROWN, A.C.J., and SWEENEY, J., concur.