[No. 36087-0-II.   Division Two.   September 23, 2008.]

NOEL PROCTOR, *Appellant*, v. ROBERT HUNTINGTON ET AL., *Respondents*.

838

*Philip A. Talmadge* and *Emmelyn Hart-Biberfeld* (of *Talmadge/Fitzpatrick*); and *Ross R. Rakow* (of *Ross R. Rakow*), for appellant.

*Bradley W. Andersen* and *Phillip J. Haberthur* (of *Schwabe Williamson & Wyatt*), for respondents.

¶1 ARMSTRONG, J. — In 1994 and 1995, Robert and Christina Huntington and Noel Proctor bought adjacent, multi-acre parcels of undeveloped land on which they constructed homes. In 2004, they discovered that the Huntingtons' home and other improvements, which take up nearly an acre, are entirely on Proctor's property because of a misunderstanding regarding the boundary marker on the north side of their properties. Proctor sued to eject the Huntingtons and to require them to remove the improvements. He also revoked permission he had given the Huntingtons to

construct and use a driveway over his property. The Huntingtons counterclaimed (1) to quiet title in themselves under adverse possession and estoppel in pais theories and (2) for an easement to the driveway. Although the trial court ruled that the Huntingtons had not proved adverse possession or estoppel in pais, it denied Proctor an injunction to remove them. Instead, it ordered the Huntingtons to pay Proctor $25,000 in exchange for a boundary adjustment giving them title to the acre on which their improvements stood. The trial court also concluded that the Huntingtons had held a revocable license, not an easement, to the driveway and ordered them to cease using it.

¶2 Proctor appeals the trial court's forced sale remedy and its admission of certain expert testimony. The Huntingtons cross-appeal the trial court's denial of their claims for estoppel in pais and for the easement to the driveway. We affirm.

## FACTS

¶3 This case concerns a disputed boundary line between two large properties in Skamania County. Both lots were originally owned by Dusty Moss, who sold the eastern lot to Robert and Christina Huntington and the western lot to Noel Proctor. At the time, both lots were undeveloped.

¶4 Before Robert[1] bought his property in January 1994, Moss walked him through it and showed him the property lines generally. The northern boundary was marked by a metal fence, and Moss showed Robert a fence post on that fence that marked the northwest corner of his parcel. Six months after purchasing the property, Robert set up a campsite on what he thought was his property but was actually part of the 30-acre parcel that Proctor later purchased. The Huntingtons lived in that campsite during the summer of 1994, but they were absent from September

---

[1] When referring to Robert Huntington, we use his first name.

1994 to April 1995. Meanwhile, Proctor purchased the 30-acre parcel in February 1995, after having been shown the same general boundaries by Moss. After the Huntingtons moved back to their campsite in April 1995, Proctor introduced himself to them, not realizing that they were on his property.

¶5 The Huntingtons chose a site on which to build a home that summer, and they needed an access road over Proctor's property. Robert testified that he asked Proctor for permission to build a permanent driveway across Proctor's land as an offshoot from the access road. Proctor gave his permission to build the road on the condition that Robert construct a gate and share the costs of maintaining the shared part of the road. But he testified that he thought the road was to be temporary while the Huntingtons built their home; the property already had another driveway that he thought they would use as their permanent driveway. The Huntingtons believed that the agreement was for a permanent road or easement but they did not ask for a written easement at the time. In later years, they repeatedly asked Proctor for a written easement, but Proctor refused.

¶6 Robert testified that before he started building the road, he wanted to verify how much of it would be on Proctor's property and how much would be on his. He testified that by chance, he encountered Dennis Peoples, the surveyor for the region, along the northern boundary of the property. Robert asked Peoples to confirm the northwest corner of his property, and Peoples mistakenly pointed out a marker, now referred to as the "16th pin," that is about 400 feet west of the true boundary.[2] Report of Proceedings (RP) at 212. Robert also testified that he showed Proctor the 16th pin and told him that Peoples had confirmed it as the boundary marker between their properties.[3] Reassured that their desired homesite was on their property, the

---

[2] Peoples had placed this marker for the benefit of the logging operation conducted on the property on the other side of the fence.

[3] Proctor denied at trial that this meeting ever took place.

Huntingtons built the driveway as well as a house, well, garage, and garden.

¶7 In spring 2004, Proctor hired a different surveyor, Richard Bell, to locate the corners of his property because he was concerned about a possible encroachment by a different neighbor. After completing the survey, Bell discovered that the Huntingtons' house, well, garage, yard, and driveway were located entirely on Proctor's property. Proctor sent the Huntingtons a letter withdrawing his permission for them to use their driveway, then brought this action for timber trespass, quiet title, ejectment, and a restraining order against trespass by the Huntingtons. The Huntingtons counterclaimed to quiet title to the disputed area and for an easement for their driveway.

¶8 During trial, Proctor moved to exclude the testimony of the Huntingtons' two expert witnesses regarding the costs and difficulty of removing the Huntingtons' improvements from the land and returning the land to its previous condition. The trial court denied the motion, ruling that the testimony might help it fashion an equitable remedy.

¶9 The trial court ruled that Proctor gave the Huntingtons an oral license, not an easement, to build and use the driveway across his property. As such, Proctor had a right, at any time, to withdraw his permission. It ordered the Huntingtons to cease using the driveway before June 1, 2007, a deadline that would give them sufficient time to construct a new driveway across their own property.

¶10 The trial court also rejected the Huntingtons' estoppel in pais claim, ruling that they had failed to prove the elements by clear and convincing evidence. As such, their improvements were on Proctor's property.[4] But the trial court denied Proctor's requests for a mandatory injunction, ejectment, and damages for trespass. It concluded that requiring the Huntingtons to move their home and other

---

[4] The court had previously dismissed the Huntingtons' adverse possession claim, finding that they had failed to meet all of the elements under RCW 7.28.085.

improvements to another location would be oppressive, unduly costly, and inequitable because:

1) The Huntingtons did not act in bad faith, negligently or willfully, when they chose to build their home on a location that was later discovered to be on Mr. Proctor's property;

2) the Huntingtons acted reasonably and in good faith when they ascertained the boundaries of their property;

3) the damage to Mr. Proctor is slight and the benefit of removing the house is equally small;

4) there are no real limitations on Mr. Proctor's future use of his property in permitting the Huntingtons to retain their home in its current location;

5) it would be impractical and unduly expensive to remove the structure; and

6) there would be an enormous disparity in resulting hardships if the Huntingtons were required to move their home.

Clerk's Papers (CP) at 229.

¶11 The trial court ordered the Huntingtons to pay Proctor $25,000[5] for an adjustment of the boundary line, giving the Huntingtons the acre on which their house, garage, yard, and well were located. It also ordered that the parcel be configured, if possible, to include a new driveway approach for the Huntingtons' homesite. Both parties appeal.

¶12 The principal issues on appeal are whether the trial court erred in finding that the Huntingtons failed to prove estoppel in pais by clear and convincing evidence and in fashioning a remedy that forced Proctor to sell the disputed land to the Huntingtons.

## ANALYSIS

¶13 We review a trial court's findings of fact for substantial supporting evidence in the record. If the evi-

---

[5] An expert appraiser, Jim Lyons, testified that this was the fair market value for a one-acre parcel of Proctor's property if conveyed by a boundary line adjustment to the Huntingtons. The trial court explicitly found Lyons to be credible.

dence supports the findings, we then consider whether the findings support the court's conclusions of law. *See Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). "Substantial evidence" is a quantum of evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). If this standard is met, we will not substitute our judgment for that of the trial court. *Sunnyside Valley Irrigation Dist.*, 149 Wn.2d at 879-80. We review the trial court's legal conclusions de novo. *Sunnyside Valley Irrigation Dist.*, 149 Wn.2d at 880.

¶14 We first consider the Huntingtons' cross appeal of the trial court's conclusion that they failed to prove estoppel in pais by clear and convincing evidence.

## I. Estoppel In Pais

¶15 Estoppel in pais requires the claimant to prove that (1) the owner made an admission, statement, or act inconsistent with a claim afterward asserted; (2) the other party acted on the faith of such admission; and (3) allowing the owner to contradict or repudiate his admission, statement, or act would result in injury to the other party. *Thomas v. Harlan*, 27 Wn.2d 512, 518, 178 P.2d 965 (1947). Because this doctrine estops an owner from asserting legal title to real property, we require proof by " 'very clear and cogent evidence.' " *Sorenson v. Pyeatt*, 158 Wn.2d 523, 539, 146 P.3d 1172 (2006) (quoting *Tyree v. Gosa*, 11 Wn.2d 572, 578, 119 P.2d 926 (1941)).

¶16 The Huntingtons base their claim on the meeting that they asserted occurred between Robert and Proctor at the 16th pin in 1995. The trial court found that at that meeting, Robert told Proctor that Peoples had told him the pin was his northwest corner and Proctor "did not offer any protest." CP at 226. The trial court found, however, that the Huntingtons proved Proctor's acquiescence to the boundary by only a preponderance of the evidence, not by clear and convincing evidence.

■ ¶17 The trial court, not a reviewing court, determines whether evidence meets the "clear, cogent, and convincing" standard of persuasion, which is met if the evidence makes the fact in issue " 'highly probable.' " *Endicott v. Saul*, 142 Wn. App. 899, 910, 176 P.3d 560 (2008) (quoting *Colonial Imps., Inc. v. Carlton Nw., Inc.*, 121 Wn.2d 726, 735, 853 P.2d 913 (1993)). This determination " 'necessarily requires a process of weighing, comparing, testing, and evaluating—a function best performed by the trier of the fact, who usually has the advantage of actually hearing and seeing the parties and the witnesses, and whose right and duty it is to observe their attitude and demeanor.' " *Endicott*, 142 Wn. App. at 910 (quoting *Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963)). Here, Robert testified that the meeting occurred; Proctor testified that it did not. Although the trial court accepted Robert's version of the incident, it acted well within its discretion in concluding that because of the dispute, the Huntingtons had not proved the incident by clear and convincing evidence. *See Hovila v. Bartek*, 48 Wn.2d 238, 241, 292 P.2d 877 (1956) (where the evidence is closely conflicting or equally balanced, trial court's findings will not be disturbed).

## II. Remedy

¶18 Proctor argues that the trial court abused its discretion by refusing to order the Huntingtons to remove their encroachments and by instead granting them title to the property.

### A. Denying Mandatory Injunction

■ ¶19 Generally, courts will order an encroacher to remove encroaching structures even though it is extraordinary relief.[6] *Arnold v. Melani*, 75 Wn.2d 143, 152, 449 P.2d

---

[6] A mandatory injunction is also often an appropriate remedy for violation of a restrictive covenant, but because such violations do not involve actual encroachments of real property, we disregard the parties' extensive citations to restrictive covenant cases.

800 (1968); *Hanson v. Estell*, 100 Wn. App. 281, 287-88, 997 P.2d 426 (2000). But we have recognized an exception where such an order would be oppressive. *See Arnold*, 75 Wn.2d at 152. To trigger the exception, the encroacher must prove by clear and convincing evidence that (1) he did not simply take a calculated risk or act in bad faith, or act negligently, willfully, or indifferently in locating the encroaching structure; (2) the damage to the landowner is slight and the benefit of removal equally small; (3) there is ample remaining room for a structure suitable for the area and there is no real limitation on the property's future use; (4) it is impractical to move the encroaching structure as built; and (5) there is an enormous disparity in the resulting hardships. *Arnold*, 75 Wn.2d at 152; *Hanson*, 100 Wn. App. at 288. The *Arnold* court emphasized that this exception is specifically intended for the "circumstance in which one party uses a legal right . . . as a weapon of oppression rather than in defense of a right." *Arnold*, 75 Wn.2d at 153.

¶20 In this case, the trial court concluded that all five of these elements were met. Proctor challenges the first, second, and fifth elements.

### 1. First Element—Negligent Encroachment

¶21 Proctor argues that the Huntingtons failed to satisfy the first element of the *Arnold* test because they took a calculated risk or acted negligently or indifferently when locating their encroachments. He maintains that in its oral ruling, the trial court "specifically found [that] the Huntingtons were negligent" even though it later declined to enter a written finding to that effect. He also contends that the court ignored "considerable testimony" that (1) neither Peoples nor Proctor met with Robert at the 16th pin and (2) Peoples did not even set the 16th pin until after the meeting allegedly took place. Br. of Appellant at 31-32.

¶22 Proctor's first argument fails for two reasons. First, the evidence supports the trial court's written findings and they adequately resolve all critical disputes; we do not look beyond them. *In re Det. of Smith*, 117 Wn. App. 611,

615, 72 P.3d 186 (2003). Second, the court's "finding" of negligence was hesitant at best: it stated, "[The Huntingtons] perhaps were negligent in fully ascertaining where their boundaries were. However, I do believe that they did in good faith rely on the 16th pin thinking that that was their boundary." RP at 926-27. When Proctor explicitly requested the court to enter a written finding that the Huntingtons were negligent, it declined to do so. The trial court's off-handed comment does not undermine its ultimate conclusion that the Huntingtons acted reasonably in locating their property.

¶23 Nor are we persuaded by Proctor's argument that the court "ignored testimony" by Proctor and Peoples that the meetings at the 16th pin never occurred. Br. of Appellant at 32. Robert testified that they did occur, and we defer to the trier of fact on issues of conflicting testimony and the credibility of witnesses. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Substantial evidence supported the trial court's finding.

### 2. Second Element—Slight Damage to Landowner

¶24 Proctor argues that the Huntingtons failed to establish the second element of the *Arnold* test for an exception to enjoining an encroacher: that the damage to the landowner is "slight."

¶25 To satisfy the "slight" harm requirement, the encroachment need not be so small as to be de minimis. *See Arnold*, 75 Wn.2d at 148. For instance, in *Arnold*, the defendant's house encroached onto the plaintiff's land by about three feet and his fence encroached by about nine feet along the boundary; the court held that this invasion was "something more than a trifle" but still of only slight harm to the plaintiff. *Arnold*, 75 Wn.2d at 148, 152. In *Hanson*, the only other published case applying the *Arnold* exception, the encroachment onto the plaintiff's land was one

foot, which the court held to have a "negligible impact" on the plaintiff. *Hanson*, 100 Wn. App. at 288-89.[7]

¶26 Here, the Huntingtons' improvements do not extend slightly beyond the boundary line with Proctor's land; they are entirely on Proctor's land. Moreover, the improvements take up nearly an acre of that land; the house alone has a 1,650 square-foot footprint. But although the Huntingtons' encroachment does not fit within the slight encroachment illustrated by *Arnold* and *Hanson*, the *Arnold* court specifically cited *Peoples Savings Bank v. Bufford*, 90 Wash. 204, 155 P. 1068 (1916), as support for its premise that the court is not required to issue an oppressive injunction, and as support for its five-part rule setting the parameters of the exception. *Arnold*, 75 Wn.2d at 152. In *Bufford*, as here, the encroacher built his home on the wrong lot in a subdivision. *Bufford*, 90 Wash. at 204-05. When the true owner discovered the situation, it sued to eject the encroacher, who raised the defense of adverse possession. *Bufford*, 90 Wash. at 205. The Supreme Court held that the evidence was insufficient to show the encroacher's open hostile possession for the required 10 years, but it nonetheless refused to quiet title in the true owner because "it would be inequitable to permit [the title owner] to oust [the encroacher]." *Bufford*, 90 Wash. at 209. The court then fashioned an equitable remedy allowing the title owner to take either the encroacher's lot in the same addition or a refund of the taxes the title owner had paid on the disputed lot. *Bufford*, 90 Wash. at 209.

¶27 The Supreme Court has never overruled *Bufford*. In fact, it has cited the case a number of times for its

---

[7] Proctor also cites several cases from other jurisdictions to argue that *Arnold* applies to only slight encroachments. *See Stuttgart Elec. Co. v. Riceland Seed Co.*, 33 Ark. App. 108, 115, 802 S.W.2d 484 (1991) (warehouse encroached 2.3 feet onto neighboring property); *Golden Press, Inc. v. Rylands*, 124 Colo. 122, 128-29, 235 P.2d 592 (1951) (footings seven feet below surface of ground encroached by about three inches); *Zerr v. Heceta Lodge No. 111*, 269 Or. 174, 185, 523 P.2d 1018 (1974) (encroachment of nine inches; no mandatory injunction where no substantial damages); *cf. Goulding v. Cook*, 422 Mass. 276, 279-80, 661 N.E.2d 1322 (1996) (while Massachusetts courts will not enjoin "truly minimal encroachments," injunction to remove septic system taking up a "spatially significant portion of the plaintiffs' lot" was upheld).

discussion of what evidence is sufficient to show a hostile possession. And in *Skoog v. Seymour*, 29 Wn.2d 355, 363-64, 187 P.2d 304 (1947), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 676 P.2d 431 (1984), the court acknowledged *Bufford*'s equitable remedy and noted that the case was "a most unusual one on its facts." The same unusual facts exist here. The Huntingtons, acting in good faith and without negligence, constructed their home entirely on Proctor's property. Although we cannot reconcile this with the slight encroachments of *Arnold* and *Hanson*, neither can we reconcile *Bufford* with those encroachments. And, because the Supreme Court cited *Bufford* as support for its five-part test in *Arnold*, we cannot conclude that *Bufford* is no longer good law. In short, *Bufford* supports the trial court's equitable remedy even though the Huntingtons did more than slightly encroach on Proctor's property.

### 3. Fifth Element—Disparity in Resulting Hardships

¶28 Proctor argues that the trial court erred in concluding that there was an "enormous disparity" between his hardship in keeping the Huntingtons' improvements on his land and the Huntingtons' hardship in removing them. He asserts that his land is designated as forest land for tax purposes, which requires that a certain number of his total acres be devoted to forestry activities. Thus, according to Proctor, the acre of land taken up by residential improvements subtracts from his available nonforestry acreage allowance and limits what he can do with the rest of the land. In addition, having two residences on the property instead of one endangers the forestry designation altogether.

¶29 Proctor's arguments are speculative. At trial, he acknowledged that he still maintains his forestry tax designation, and he presented no evidence of any specific plans for the rest of his property that were thwarted by the Huntingtons' improvements on the property. Furthermore, even if Proctor's tax designation were eliminated, his hardship would be monetary in nature and therefore subject to

legal remedies without the need for a mandatory injunction. *See Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000) ("[I]njunctive relief will not be granted where there is a plain, complete, speedy and adequate remedy at law."). In contrast, the Huntingtons' hardship from the mandatory injunction would be considerable because it would require them to destroy their sizeable family home and build elsewhere. In sum, the trial court properly considered Proctor's arguments and properly found an enormous disparity between the parties' hardships.

## B. Alternate Remedy/Granting Title

¶30 Proctor argues that even if the *Arnold* doctrine applies to this case, the trial court erred in imposing the remedy of a forced sale of the disputed property.

¶31 In *Arnold*, the court granted the defendant an easement for the area covered by his encroachments as long as he paid the plaintiff the value of the land as *damages*. *Arnold*, 75 Wn.2d at 153. Unlike this case, title did not change hands. In fact, the court specifically ordered that while the defendant could repair his existing encroachments, any replacement of those improvements must be within his own lot. *Arnold*, 75 Wn.2d at 153. But our facts are unlike those in *Arnold* where the encroachment was minor. Rather, as we have discussed, the facts here are most like *Bufford*—a home and other improvements built entirely on another's property. Under these circumstances, an easement is not workable, and the trial court's boundary adjustment was an appropriate remedy.

### III. EXPERT TESTIMONY

¶32 Proctor argues that the trial court abused its discretion by admitting expert testimony regarding the value of the disputed property and the costs of moving the Huntingtons' improvements. He argues that the only possible relevance of this testimony was to the "balancing the equities" inquiry; therefore, the court's decision to admit

the evidence "was tantamount to a finding before the conclusion of Proctor's case that it would be inequitable to eject the Huntingtons from the disputed parcel." Br. of Appellant at 38.

¶33 We review a trial court's evidentiary rulings for an abuse of discretion. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 691, 101 P.3d 1 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, i.e., if the court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). The trial court did not abuse its discretion here. Even if the court had denied the Huntingtons equitable relief, they were entitled to ask for the relief and to present evidence to support it.

### IV. DRIVEWAY EASEMENT

¶34 The Huntingtons contend that the trial court erred by finding that they had merely a license and not an easement for their driveway across Proctor's land.

¶35 Licenses and easements are distinct in principle. 25 AM. JUR. 2D *Easements and Licenses in Real Property* § 2 (2004). The basic difference is that an easement is a right and a license is a privilege. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE § 2.1, at 82 (2d ed. 2004). Unlike an easement, a license is revocable, nonassignable, and created by the licensor's oral, written, or implied consent. *Conaway v. Time Oil Co.*, 34 Wn.2d 884, 894, 210 P.2d 1012 (1949); *Showalter v. City of Cheney*, 118 Wn. App. 543, 548, 76 P.3d 782 (2003). An easement is a property right, albeit distinct from ownership, to use another's land. *Dickson v. Kates*, 132 Wn. App. 724, 731, 133 P.3d 498 (2006). And because easements are " 'encumbrance[s] upon real estate,' " any contract creating or evidencing an easement must be in writing and comply with

the statute of frauds set forth in RCW 64.04.010. *Berg v. Ting*, 125 Wn.2d 544, 551, 886 P.2d 564 (1995) (quoting RCW 64.04.010).

¶36 Here, because no deed establishes an easement, the Huntingtons assert that the doctrines of part performance and estoppel entitle them to specific performance of an *agreement* to create such an easement.[8] But these doctrines apply only if Proctor agreed to convey an easement as opposed to a license. *See Adler v. Fred Lind Manor*, 153 Wn.2d 331, 362-63, 103 P.3d 773 (2004); *Kirk v. Tomulty*, 66 Wn. App. 231, 237, 831 P.2d 792 (1992). If Proctor agreed to grant only a revocable license, the Huntingtons would not be entitled to an easement even if they fulfilled all their duties under the contract. *Kirk*, 66 Wn. App. at 237.

¶37 A grantor must intend to convey an easement. *M.K.K.I., Inc. v. Krueger*, 135 Wn. App. 647, 654, 145 P.3d 411 (2006), *review denied*, 161 Wn.2d 1012 (2007). Here, the trial court impliedly found that Proctor did *not* intend to create an easement when it (1) concluded that no easement existed and (2) noted that Proctor had repeatedly refused to execute a written easement. Substantial evidence supports these findings. Proctor testified that the word "permanent" never came up in his discussions with the Huntingtons; in fact, he assumed at the time that the Huntingtons would be using the driveway only temporarily during the construction of their home because they already had a permanent driveway on their own property. Furthermore, after the Huntingtons' construction was finished,

---

[8] Under the doctrine of part performance, a court may specifically enforce an oral agreement to convey an estate in real property if there is sufficient part performance of the agreement. *Berg*, 125 Wn.2d at 556 (citing *Miller v. McCamish*, 78 Wn.2d 821, 826, 479 P.2d 919 (1971)). Equitable estoppel applies where there has been an admission, statement, or act that has been justifiably relied on to another party's detriment. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 362-63, 103 P.3d 773 (2004). Some commentators have noted that the estoppel doctrine is often confused with the part performance doctrine because they arise out of essentially the same fact pattern and usually may be used interchangeably. 17 STOEBUCK & WEAVER, *supra*, § 2.8, at 108. We need not consider the distinctions between the two doctrines because the Huntingtons fail to meet their burden on either.

Proctor repeatedly refused their requests for a written easement to the driveway. This evidence is sufficient to persuade a rational, fair-minded person that Proctor did not intend to grant the Huntingtons an easement for the driveway. *See Sunnyside Valley Irrigation Dist.*, 149 Wn.2d at 879. As a result, the most the Huntingtons were ever entitled to was a revocable license from Proctor. The trial court did not err when it ordered the Huntingtons to cease using the driveway on Proctor's property.

## V. ATTORNEY FEES

¶38 Proctor argues that he is entitled to attorney fees under RAP 18.9 because the Huntingtons' cross appeal is frivolous. Specifically, he contends that we should sanction the Huntingtons because "Washington does not recognize an easement by estoppel and there is no clear case law supporting their arguments." Reply Br. of Appellant at 32.

¶39 An appeal is frivolous if there are no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that there was no reasonable possibility of reversal. *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003) (quoting *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 200-01, 796 P.2d 412 (1990)). The Huntingtons cite several Washington cases in which easements by estoppel are discussed favorably. *See Ormiston v. Boast*, 68 Wn.2d 548, 552, 413 P.2d 969 (1966); *Canterbury Shores Assocs. v. Lakeshore Props., Inc.*, 18 Wn. App. 825, 827, 572 P.2d 742 (1977). We cannot find that the Huntingtons' cross appeal was frivolous. We deny Proctor's request for sanctions.

¶40 Affirmed.

PENOYAR, A.C.J., and HUNT, J., concur.

Review granted at 165 Wn.2d 1041 (2009).