[No. 25879-0-II.   Division Two.   October 18, 2002.]

PIETY ANN CLARK, *Respondent*, v. WAYNE A. BAINES, ET AL., *Petitioners*.

20

*Wayne C. Fricke* (of *Law Offices of Monte E. Hester, Inc., P.S.*), for petitioners.

*Otto S. Matsch*, for respondent.

QUINN-BRINTNALL, A.C.J. — Wayne A. Baines appeals the trial court's dismissal of his malicious prosecution counterclaims against Piety Ann Clark. Following Baines' entry of an *Alford*[1] plea to two counts of fourth degree assault with sexual motivation, Clark sued Baines seeking damages for sexual battery and outrage. Because Baines' unchallenged judgment and sentence conclusively establishes probable cause for Clark's lawsuit and precludes Baines' claim of

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

malicious prosecution against the victim of the offense to which he pleaded guilty, we affirm.

## FACTS

Piety Ann Clark accused her state-provided caregiver, Wayne A. Baines, of rape. Baines admitted having sexual relations with Clark, but he claimed that they were consensual. He also claimed that Clark made the rape accusations after he broke off their affair and that Clark, who received state support and benefits because she is blind, was not as blind as she pretended.

The State initially charged Baines with first degree rape with a firearm enhancement, but it amended the charges to two counts of fourth degree assault with sexual motivation. On February 24, 1999, Baines entered an *Alford* plea to both counts in the amended information and stated:

> Although I maintain my innocence I am entering into this plea agreement because after reviewing the facts and law with my attorney I believe a jury would find me guilty of the crime charged in the Amended Information if the case proceeded to trial and I desire to take advantage of the State's recommendation.

Clerk's Papers (CP) at 22.

He also assured the court that his plea was voluntary, stating:

Q   Now, has anyone threatened you or forced you in any way to make you enter these pleas today?

A   No, ma'am.

Q   On paragraph 11 of this document, [your attorney] has written out the sentencing recommendation the prosecuting attorney has agreed to recommend in this case to the court regarding this matter. Have you reviewed that sentencing recommendation with [your attorney]?

A   Yes, ma'am.

Q   Other than this sentencing recommendation that the prosecutor has agreed to make, has anyone offered you

anything or given you anything in return for your entering these pleas?

A   No, ma'am.

Q   And did you sign this document here; is that your signature?

A   Yes, ma'am.

CP at 30.

The trial court accepted Baines' pleas and suspended a one-year sentence. No restitution was ordered.[2] Baines has never challenged the validity of his plea-based convictions on appeal nor by collateral attack.

On May 13, 1999, Clark sued Baines for sexual battery and outrage. On May 21, 1999, Baines filed a counterclaim for malicious prosecution. On April 14, 2000, the trial court granted Clark's motion for summary judgment and dismissed Baines' malicious prosecution counterclaim. We granted discretionary review.

One issue is dispositive. Does the unchallenged judgment and sentence entered on a defendant's *Alford* pleas conclusively establish probable cause and, thereby, preclude a counterclaim for malicious prosecution in a damages action brought by the victim of the crime to which the defendant pleaded guilty? We address this issue in two contexts: First, whether Baines may bring a malicious prosecution action

---

[2] RCW 9.95.210(3) provides:

The superior court *shall* order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW. If the superior court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the crime victims' compensation act, the department of labor and industries, as administrator of the crime victims' compensation program, may petition the superior court within one year of imposition of the sentence for entry of a restitution order. Upon receipt of a petition from the department of labor and industries, the superior court shall hold a restitution hearing and shall enter a restitution order.

(Emphasis added.) We also note that the trial court could have imposed a restitution award that included general damages and could have included pain and suffering damages because the matter was not a felony. *State v. Morgan*, 8 Wn. App. 189, 504 P.2d 1195 (1973). The Sentencing Reform Act of 1981, chapter 9.94A RCW, which governs felony sentencing excludes restitution damages for pain and suffering. RCW 9.94A.753(3) (formerly RCW 9.94A.142(1) (1997)).

against Clark for having been criminally prosecuted. And second, whether Baines may bring a malicious prosecution action against Clark for suing him civilly to recover damages arising from the charges to which he pleaded guilty.

## ANALYSIS

■ An action for malicious prosecution began as a remedy for unjustifiable criminal proceedings. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 120, at 889 (5th ed. 1984). Today the phrase "malicious prosecution" has a broader reading and is an available remedy in all types of civil law suits. *See* CR 18.[3] It is even possible to have dueling malicious prosecution claims.[4]

■ For Baines to prove that he is being maliciously prosecuted for sexual battery, he must show that Clark, the malicious prosecution defendant, did the following: (1) initiated or continued the principal action, (2) without probable cause, and (3) with malice. He must also show that (4) the principal action was terminated on the merits in favor of the malicious prosecution plaintiff and (5) the principal action injured or damaged the malicious prosecu-

---

[3] CR 18 states:

A party asserting a claim to relief as an original claim, counterclaim, cross claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party.

... *Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action;* but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money.

(Emphasis added.)

[4] RCW 4.24.350 allows a defendant in a malicious prosecution lawsuit to counterclaim malicious prosecution. In such actions, the plaintiff alleges malicious criminal prosecution for bringing a criminal action while the defendant alleges malicious prosecution in the bringing of the civil action claiming malicious prosecution of the criminal action.

tion plaintiff.[5] *See Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993). Baines bears the burden of proving each necessary element by a preponderance of the evidence.

█ █ Although a plaintiff must prove all elements of malicious prosecution, malice and want of probable cause constitute the gist of a malicious prosecution action. *Hanson*, 121 Wn.2d at 558. And probable cause is a complete defense to an action for malicious prosecution. *Hanson*, 121 Wn.2d at 558. A conviction, although later reversed, is conclusive evidence of probable cause, unless that conviction was obtained by fraud, perjury, or other corrupt means or the ground for reversal was absence of probable cause. *Hanson*, 121 Wn.2d at 559-60 (citing *Hall v. Dare*, 147 Wash. 264, 268, 266 P. 162 (1928)); *Fondren v. Klickitat County*, 79 Wn. App. 850, 855, 905 P.2d 928 (1995). Baines' conviction has not been reversed.

MALICIOUS PROSECUTION—CRIMINAL CHARGES

█ To maintain a malicious prosecution claim, the principal action must have terminated in favor of the party claiming he was maliciously prosecuted (in a criminal context) or is currently being maliciously prosecuted (in a civil context). Here the criminal action resulted in Baines' convictions; it did not terminate in his favor. Thus, Baines may not bring a malicious prosecution action for having been criminally prosecuted.

MALICIOUS PROSECUTION—CIVIL DAMAGES CLAIM

Other slightly different reasons support the trial court's dismissal of Baines' malicious prosecution claim in Clark's civil action for sexual battery. Even if Clark's civil battery and outrage claims were to terminate in Baines' favor, the record before us establishes that Baines cannot satisfy the probable cause and malice elements of his malicious prosecution counterclaim.

---

[5] The remaining two elements, (6) resulting in special injury and (7) the arrest or seizure of property, are not relevant to this discussion. *See Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d 956, 964, 603 P.2d 828 (1979).

UNCHALLENGED JUDGMENT AND SENTENCE ESTABLISHES PROBABLE CAUSE

■■ Baines' plea acknowledges that there is a factual basis for his fourth degree assault with sexual motivation convictions. Additionally, the trial court found an independent factual basis for these charges before accepting Baines' plea and Baines has not challenged this finding. *See State v. Hubbard*, 106 Wn. App. 149, 155, 22 P.3d 296 ("[w]hen a defendant's equivocal factual statement is part of an *Alford* plea *and* there is an independent factual basis for the guilty plea, there is no reason to refuse the plea"), *review denied*, 145 Wn.2d 1004 (2001). Thus, Baines' convictions are supported by both his equivocal plea and the trial court's unchallenged finding that an independent factual basis exists sufficient to support the fourth degree asssault with sexual motivation charges.

Baines has not alleged fraud nor otherwise challenged his convictions or the guilty pleas on which they are based. A trial court must allow withdrawal of a guilty plea in order to correct a manifest injustice. CrR 4.2(f), 7.8(b); *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001). Therefore, Baines' unchallenged plea-based convictions are sufficient to establish probable cause for Clark's claim for damages arising from the charges for which Baines stands convicted.[6]

If, as Baines claims, Clark is lying, his remedy was a motion to withdraw his plea under CrR 7.8(b).[7] Because his

---

[6] *See* ER 801(d)(2); *N.Y. Underwriters Ins. Co. v. Doty*, 58 Wn. App. 546, 551, 794 P.2d 521 (1990).

[7] CrR 7.8(b) states:

On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.6;

(3) *Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party*;

(4) The judgment is void; or

conviction stands unchallenged, the trial court properly granted Clark's motion to dismiss the malicious prosecution counterclaim. Baines' malicious prosecution claim fails because, in the face of his unchallenged criminal conviction, he cannot prove that Clark maliciously prosecuted her civil action *without probable cause*.

### BAINES' ADMISSION ESTABLISHES PROBABLE CAUSE

In his sworn statement to the court in support of his *Alford* plea, Baines stated:

> Although I maintain my innocence, I am entering into this plea agreement because after reviewing the facts and law with my attorney, I believe a jury would find me guilty of the crime charged in the amended information [fourth degree assault with sexual motivation] if this case proceeded to trial and I desire to take advantage of the State's recommendation.

CP at 22. Although he denied that he committed the crimes, Baines acknowledged in a sworn statement that there was sufficient evidence from which a jury could find him guilty if the case proceeded to trial. In other words, despite his denial, he admitted that there were sufficient circumstances to warrant 12 ordinarily prudent jurors in believing beyond a reasonable doubt that he committed the crime charged in the amended information.[8]

That ordinarily reasonably prudent persons have information sufficient to lead them to believe that the defendant committed the crime charged *is* probable cause. Probable cause has also been defined as

> " 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious

---

*(5) Any other reason justifying relief from the operation of the judgment.*

The motion shall be made within a reasonable time and for reasons (1) and (2) not more than 1 year after the judgment, order, or proceeding was entered or taken, and is further subject to RCW 10.73.090, .100, .130, and .140. A motion under section (b) does not affect the finality of the judgment or suspend its operation.

(Emphasis added.)

[8] RCW 9A.44.020(1) (statement of rape victim, if believed, sufficient as a matter of law).

man in believing the accused to be guilty.'" *State v. Scott*, 93 Wn.2d 7, 11, 604 P.2d 943 (1980) (citations omitted). And "'[t]he question of probable cause should not be viewed in a hypertechnical manner.'" *State v. Herzog*, 73 Wn. App. 34, 53, 867 P.2d 648 (1994) (quoting *State v. Remboldt*, 64 Wn. App. 505, 510, 827 P.2d 282 (1992)).

*State v. Gillenwater*, 96 Wn. App. 667, 670, 980 P.2d 318 (1999), *review denied*, 140 Wn.2d 1004 (2000).

Baines' sworn admission in his plea statement provides probable cause for the victim of the crime to bring an action for damages, in the manner of restitution, to the limits of the crime of conviction. In light of his admission that probable cause supports the charges, Baines cannot prove the absence of probable cause. And he cannot sustain his counterclaim for malicious prosecution.

*BAINES' ADMISSION NEGATES MALICE*

■ Also because Baines *admitted* the existence of probable cause, he cannot show that Clark acted with *malice* by filing a civil action that is limited to recovering damages for acts constituting the elements of the gross misdemeanor sexual battery charges to which he pleaded guilty.[9]

The dissent relies on *Turngren v. King County*, 104 Wn.2d 293, 705 P.2d 258 (1985); *Bender v. City of Seattle*, 99 Wn.2d 582, 664 P.2d 492 (1983); and *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 125 P.2d 681 (1942), for its claim that Baines' *Alford* plea-based convictions do not conclusively establish probable cause. But these cases do not control our decision here. Unlike Baines, Peasley, Bender, and Turngren were never convicted and never admitted probable cause existed for the actions brought against them. Peasley was acquitted. *Peasley*, 13 Wn.2d at 489. The charges were dismissed against Bender before verdict when the complaining witness refused to testify. *Bender*, 99

---

[9] Baines' statement would not preclude his claim for malicious prosecution if Clark had brought a claim for rape or assault with a weapon—elements of the charges dismissed in exchange for the plea. Clark's action is limited to recovery of damages the court should have imposed in sentencing Baines. *See* RCW 9.94A.753(9).

Wn.2d at 586. And the search warrant for the Turngren home failed to provide any evidence of criminal activity. *Turngren*, 104 Wn.2d at 296.

The dissent would allow an action for malicious prosecution in the face of an unchallenged judgment and sentence. Such procedure undermines the integrity and finality of our criminal justice system. Allowing a defendant to sue or countersue the victim to assert his innocence in a collateral civil action creates the possibility of inconsistent verdicts while allowing a defendant to maintain the benefit of his plea bargain. If, as Baines claims, Clark is lying, and his pleas were obtained by her fraud, then his remedies are to litigate that issue in the criminal cause in which the lie is alleged to have occurred and move to withdraw his pleas. CrR 7.8. Otherwise, he must accept the consequences of his pleas, including restitution and financial reparations.

## CONCLUSION

Termination of the principal action in favor of the malicious prosecution plaintiff remains an element of all malicious prosecution actions, criminal or civil. A valid criminal conviction conclusively establishes that the criminal action did not terminate in the defendant's favor and precludes a malicious prosecution claim.[10]

Here, Baines' unchallenged guilty pleas and his admission that there was sufficient evidence from which a jury could find him guilty of fourth degree assault with sexual motivation negates the "without probable cause" and "malice" elements of his malicious prosecution counterclaim.[11]

---

[10] *But see Falkner v. Foshaug*, 108 Wn. App. 113, 29 P.3d 771 (2001) (following successful appeal, criminal defendant not precluded from suing his defense attorney for malpractice after entering *Alford* plea to lesser charge).

[11] Relying on cases from Division One of this court, Baines asserts that an *Alford* plea does not collaterally estop a defendant from asserting a malicious prosecution claim brought by the victim of the crime of which he was convicted. However, *Safeco Insurance Co. of America v. McGrath*, 42 Wn. App. 58, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986), and *Doty*, 58 Wn. App. 546, on which Baines relies, are distinguishable. Both involved an insurer's duty to defend under the terms of a contract. The cases do appear to limit collateral estoppel

We hold that the trial court properly granted Clark's motion to dismiss Baines' malicious prosecution counterclaim and affirm.

BRIDGEWATER, J., concurs.

MORGAN, J. (concurring in part and dissenting in part) — The majority's statement of facts is incomplete. To fully understand the case, it is necessary to consider the following facts also.

On Thursday, October 2, 1997, Piety Ann Clark told a Pierce County deputy sheriff "that she ha[d] been raped, approximately eight times by Wayne Baines." She also said that Baines had "threatened her with a handgun." Baines told the deputy "the sexual acts were consensual."[12]

On October 6, 1997, the State charged Baines with first degree rape in Pierce County cause number 97-1-04097-5. He was arraigned and pleaded not guilty.

Sixteen months later, the State and Baines agreed that Baines would enter *Alford*[13] pleas to two counts of fourth

---

analysis to issues actually fully litigated at trial. The doctrine of collateral estoppel applies only in civil cases where a defendant in the civil case was previously convicted of criminal charges after a trial, stating that this was because the defendants had a "full and fair opportunity" to litigate the issue. *McGrath*, 42 Wn. App. at 62. But a defendant who enters a plea of guilty—*Alford* or not—*has* been offered a full and fair opportunity to litigate the charges against him. And he has knowingly and voluntarily elected not to litigate it. Thus, he is estopped from maintaining a malicious prosecution suit against a victim seeking damages limited to and arising directly from the action to which he elected to forgo litigation by entering a plea of guilty. The public's interest in judicial economy and the finality of judgments requires that a defendant be bound by his knowing and voluntary plea. Certainly the victim of a crime cannot be said to have acted with malice by suing the defendant who was lawfully convicted of having committed a crime against her in order to recover damages from the crime of which he was convicted and to which he elected not to offer a defense.

Additionally we note that *Hadley v. Maxwell*, 144 Wn.2d 306, 27 P.3d 600 (2001), addresses the adjudicating of civil infractions and is neither controlling nor persuasive in the circumstances presented here.

[12] Mot. for Discretionary Review, Ex. 1, at 1-2. Clerk's Papers (CP) at 55 shows that the trial court considered the exhibit.

[13] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

degree assault with sexual motivation.[14] The State would reduce the charge from first degree rape (a Class A felony carrying a possible life sentence)[15] and recommend one day in jail with one year of probation.[16] In a document titled "Prosecutor's Statement Regarding Amended Information," the State explained:

> The State is not saying that a sexual assault of some sort did not occur, however, there is a significant problem with the credibility of the victim. The victim is legally blind, however, after speaking with witnesses, some of whom have seen her driving, it appears that she can see to a far greater degree than she will admit to. Her sight would have been an issue at trial.
>
> A conviction as charged would be further doubtful because there is strong evidence that the victim and the defendant may have engaged in a mutual sexual relationship in which the victim was rejected.[17]

In a document titled "Statement of Defendant on Plea of Guilty," Baines explained:

> Although I maintain my innocence I am entering into this plea agreement because after reviewing the facts and law with my attorney I believe a jury would find me guilty of the crime charged in the Amended Information if the case proceeded to trial and I desire to take advantage of the State's recommendations.[18]

On February 24, 1999, Baines appeared in open court to change his plea. The prosecutor stated:

> The matter is set this morning for a plea to an amended charge, and the state is moving to amend on the condition the

---

[14] *See* RCW 9A.36.041.

[15] *See* RCW 9A.44.040.

[16] Report of Proceedings (RP) (Feb. 24, 1999) at 10. More precisely, the State agreed to recommend two concurrent sentences of 365 days in jail, with 364 days suspended on conditions that included probation.

[17] CP at 20. According to defense counsel's statements at sentencing, Clark denied any such relationship during pretrial interviews. RP (Feb. 24, 1999) at 11.

[18] CP at 22.

defendant plead guilty to two counts of assault in the fourth degree with sexual motivation.

. . . .

[Defense counsel] and I have participated in multiple interviews with the victim together, and I also have talked to the victim separately, and it's been a very difficult case to resolve. It's been a difficult case for the state to square, as far as determining whether we could succeed at trial as charged, and ultimately, as time has gone on, and with the different facts that have come out in the interviews, the state believes that it's in the interests of justice that the state reduce the charge, *primarily based on the lack of the state's ability to succeed at trial.*

If the court has any further questions, I'll answer them, but that's the basis for the amendment.[19]

Defense counsel stated that Baines was not agreeing to the facts;[20] he was agreeing only that the State had evidence sufficient for a jury to convict.[21] The trial court accepted Baines' pleas and adopted the State's sentencing recommendation.

On May 13, 1999, Clark filed this civil action, Pierce County cause number 99-2-07724-1. She alleged that Baines had "pled guilty . . . to two counts of 4th degree assault with sexual motivation," and that he had "battered [her] by sexually assaulting her."[22] She prayed for damages.

On May 21, 1999, Baines filed an answer in which he denied Clark's allegations and counterclaimed for malicious prosecution of both the former criminal action and the

---

[19] RP (Feb. 24, 1999) at 2-3; CP at 25-26 (emphasis added).

[20] CP at 36-37.

[21] *See State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976) (*Alford* plea rests on adequate factual basis "if there is sufficient evidence for a jury to conclude that he is guilty").

[22] CP at 2. Clark also alleged that Baines had committed "the tort of outrage." CP at 3. That allegation seems merely to duplicate the allegation of sexual assault, so I omit it from the text.

current civil action.[23] In the counterclaim, he alleged that Clark's allegations were "false and without merit" and "instituted through malice."[24] He prayed for dismissal of the complaint and damages on the counterclaim.

Early in 2000, Clark moved for summary judgment on the counterclaim. She claimed that Baines could not prove "that the proceedings [had] terminated on the merits in [his] favor."[25] Nor could he prove, she said, that her allegations were not supported by probable cause. Baines responded that he did not have to prove termination of the proceedings in his favor because the requirement of termination had been "abrogated by the legislature under RCW 4.24.350."[26] Baines further responded that whether Clark's allegations were supported by probable cause was a disputed question of material fact for a trier of fact to decide.

On April 14, 2000, the trial court granted Clark's motion and dismissed Baines' counterclaim.[27] It based its ruling exclusively[28] on documents from the earlier criminal case: the "Statement of Arresting Officer and Preliminary Finding of Probable Cause," the "Prosecutor's [S]tatement Regarding Amended Information," the "Statement of Defendant on Plea of Guilty," a "transcript of Plea and Sentence," and the "Judgment and Sentence."[29] Baines moved for discretionary review, which this court granted.

---

[23] The counterclaim itself does not state that Baines is seeking damages for both actions. At oral argument in this court, however, Baines' counsel insisted that he was.

[24] CP at 5.

[25] CP at 12.

[26] CP at 18.

[27] CP at 50-51.

[28] CP at 55. In its written order, the trial court recited that it was relying not just on the documents listed in the text, but also on various pleadings and briefs. Because those pleadings and briefs do not comply with CR 56(e), they may not be used to establish facts. They may, however, be used to show what allegations and arguments the trial court had before it.

[29] CP at 55. The parties have not briefed or argued whether these documents would be admissible at trial. They ask us to assume admissibility, and I have done that.

At the root of any malicious prosecution claim is an allegation that a "principal action" has been maliciously prosecuted.[30] Formerly, the principal action had to be criminal.[31] Today, it may be criminal or civil.[32]

A malicious prosecution claim has five elements when it arises from a principal action that was criminal. It has the same five elements, plus two more, when it arises from a principal action that was or is civil. The five elements are that the malicious-prosecution defendant (1) initiated or continued the principal action (2) without probable cause and (3) with malice; that (4) the principal action was terminated on the merits in favor of the malicious-prosecution plaintiff; and that (5) the principal action caused injury or damage to the malicious-prosecution plaintiff.[33] The additional two elements are (6) "special injury" and (7) "arrest of the person or seizure of property."[34] At trial, the

---

[30] I use the term "principal action" because the legislature used it in RCW 4.24.350.

[31] W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 120, at 889 (5th ed. 1984) (action for malicious prosecution "began as a remedy for unjustifiable criminal proceedings").

[32] RCW 4.24.350(1); Hanson v. Estell, 100 Wn. App. 281, 286, 997 P.2d 426 (2000) (civil); Brin v. Stutzman, 89 Wn. App. 809, 818, 951 P.2d 291 (civil), review denied, 136 Wn.2d 1004 (1998); Hanson v. City of Snohomish, 121 Wn.2d 552, 558, 852 P.2d 295 (1993) (criminal); Pay 'N Save Corp. v. Eads, 53 Wn. App. 443, 447, 767 P.2d 592 (1989), superseded by statute, 100 Wn. App. 281 (2000) (civil); Fenner v. Lindsay, 28 Wn. App. 626, 629, 625 P.2d 180 (1981) (civil); Gem Trading Co. v. Cudahy Corp., 92 Wn.2d 956, 964, 603 P.2d 828 (1979) (civil); Petrich v. McDonald, 44 Wn.2d 211, 217-18, 266 P.2d 1047 (1954) (civil); Peasley v. Puget Sound Tug & Barge Co., 13 Wn.2d 485, 497, 125 P.2d 681 (1942) (criminal); William L. Prosser, Law of Torts § 114, at 870 (3d ed. 1964) ("The action of malicious prosecution, which began as a remedy for unjustifiable criminal proceedings, has been undergoing a slow process of extension into the field of the wrongful initiation of civil suits.").

[33] Peasley, 13 Wn.2d at 497; see also Hanson, 121 Wn.2d at 558; Bender v. City of Seattle, 99 Wn.2d 582, 593, 664 P.2d 492 (1983); Gem Trading, 92 Wn.2d at 962-63; Hanson, 100 Wn. App. at 286; Brin, 89 Wn. App. at 818; Pay 'N Save Corp., 53 Wn. App. at 447; 16A David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 21.2, at 45 (2d ed. 2000).

[34] Gem Trading, 92 Wn.2d at 963; see also Petrich, 44 Wn.2d at 216; Manhattan Quality Clothes, Inc. v. Cable, 154 Wash. 654, 657, 283 P. 460 (1929); Abbott v. Thorne, 34 Wash. 692, 694, 76 P. 302 (1904). Elements (1), (2), and (3) parallel the elements of duty and breach in causes of action that are not so archaically described. Element (5) parallels causation and damages in other actions. Element

claimant has the burden of proving each necessary element.[35]

The claimant here is Baines. According to Clark, the present record shows he cannot prove the second and fourth elements. I turn to those elements, which I refer to as the probable cause element and the termination element, respectively.

## I. TERMINATION ELEMENT

Turning first to the termination element, I address two questions. (A) In general, must a malicious prosecution claimant prove that the principal action terminated in his or her favor? (B) If so, can Baines do that in this case?

## A

According to Baines, the termination element has been abrogated by RCW 4.24.350. According to Clark, the termination element has not been abrogated; it is one of the five "common law elements," and even "after enactment of RCW 4.24.350" the courts have held "that all five common law elements must be pleaded and proved."[36]

RCW 4.24.350 was enacted in 1977. It provides in pertinent part:

> In any action for damages, whether based on tort or contract or otherwise, a claim or counterclaim for damages may be litigated in the principal action for malicious prosecution on the ground that the action was instituted with knowledge that the same was false, and unfounded, malicious and without probable cause in the filing of such action . . . .[37]

---

(4) limits as a matter of social policy the circumstances under which a malicious prosecution action can be brought.

[35] *Peasley*, 13 Wn.2d at 498; *see Bender*, 99 Wn.2d at 593.

[36] Br. of Resp't at 3.

[37] LAWS OF 1977, 1st Ex. Sess., ch. 158, § 1, now codified in RCW 4.24.350(1).

Baines relies on dicta from several cases. In *Gem Trading Co. v. Cudahy Corp.*,[38] Division Three of this court said:

> The legislature's purpose in enacting RCW 4.24.350 was to allow a defendant to cross-claim for malicious prosecution within the context of the principal action. The purpose of the statute was to abrogate the common-law requirement that the plaintiff in a malicious prosecution action must prove, in order to maintain the action, that the previous action was either abandoned or terminated on its merits in favor of the plaintiff.[39]

Later, in *Fenner v. Lindsay*,[40] *Pay 'N Save Corp. v. Eads*,[41] *Brin v. Stutzman*,[42] and *Hanson v. Estell*,[43] Divisions One and Three of this court reiterated similar dicta.

---

[38] 22 Wn. App. 278, 588 P.2d 1222 (1978), *aff'd*, 92 Wn.2d 956, 603 P.2d 828 (1979).

[39] *Gem Trading*, 22 Wn. App. at 284. The issue in *Gem Trading* was whether a malicious prosecution plaintiff must "allege an arrest or seizure of his property and some special injury in order to maintain his action." *Gem Trading*, 22 Wn. App. at 279. The issue was *not* whether a malicious prosecution plaintiff must prove that the principal action terminated in his or her favor. When the Supreme Court reviewed *Gem Trading*, it did not comment on the quotation in the text. *Gem Trading*, 92 Wn.2d at 966.

[40] 28 Wn. App. 626, 630, 625 P.2d 180 (1981) (RCW 4.24.350's purpose is "to permit a defendant to cross-claim for malicious prosecution by abrogating the common law requirement of showing prior abandonment by the plaintiff, or termination in favor of the defendant."). The issue before the court was "whether RCW 4.24.350 abrogates the common law requirement of seizure of property." *Fenner*, 28 Wn. App. at 630. The issue before the court was *not* whether a malicious prosecution plaintiff must prove that the principal action terminated in his or her favor.

[41] 53 Wn. App. 443, 447, 767 P.2d 592 (1989) ("Legislature has altered the common law requirements *slightly* to permit a defendant to assert a counterclaim for malicious prosecution in the principal action") (emphasis added).

[42] 89 Wn. App. 809, 818-19, 951 P.2d 291 (1998) ("Legislature abrogated 'the common law requirement of showing *prior* abandonment by the plaintiff, or termination in favor of the defendant' by permitting 'a defendant to cross-claim for malicious prosecution' under RCW 4.24.350" (quoting *Fenner*, 28 Wn. App. at 630) (emphasis added)). The issue, according to the court's holding, was whether a malicious prosecution claim can be based "on an invalid factual allegation made in support of a cause of action that is otherwise supported by probable cause." *Brin*, 89 Wn. App. at 821.

[43] 100 Wn. App. 281, 286, 997 P.2d 426 (2000) ("The Legislature later abrogated the fourth [termination] element by permitting a defendant to assert a counterclaim for malicious prosecution under RCW 4.24.350."). The issues were whether the record showed malice and lack of probable cause with enough clarity to warrant judgment as a matter of law. *Hanson*, 100 Wn. App. at 286.

Except for *Pay 'N Save*, these dicta are too broad. To explain why, I examine the termination element's former and current effects.

Before 1977, the termination element had both procedural and substantive effects. Procedurally, it prevented a malicious prosecution claimant from joining his or her claim with the principal action; it required that the claim be brought in a separate action; and it mandated that the separate action not be commenced until after the principal action had terminated. Substantively, it required that a claimant allege and prove, as an element of his or her separate action, that the earlier principal action had terminated on the merits in his or her favor.

Today, RCW 4.24.350 abrogates the termination element's procedural effect when the principal action is *civil*. By its terms, RCW 4.24.350 provides that a malicious prosecution claim may be brought in the principal action if the principal action is itself for malicious prosecution. By judicial extension, RCW 4.24.350 seems also to provide that a malicious prosecution claim may be brought in the principal action when the principal action is civil, even though the principal action is not for malicious prosecution (e.g., when the principal action is for replevin,[44] breach of contract,[45] or injunctive relief[46]). This extension seems consistent with CR 13[47] and CR 18,[48] although no case relies on either rule.

---

[44] *Brin*, 89 Wn. App. at 818.

[45] *Gem Trading*, 22 Wn. App. at 284 (third party complaint alleged breach of an agency contract).

[46] *Hanson*, 100 Wn. App. at 286-87.

[47] CR 13 provides in part:

  (a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal

Today, RCW 4.24.350 does *not* abrogate the termination element's procedural effect when the principal action is *criminal*. RCW 4.24.350 does *not* allow a malicious prosecution claimant to join, in a criminal principal action in which he or she is the accused, a claim that the complaining witness or someone else be held liable in damages for malicious prosecution.[49]

Today, RCW 4.24.350 does not abrogate the termination element's substantive effect, regardless of whether the principal action is civil or criminal. The element's substantive effect is designed to ensure, at least in part, (1) that a malicious prosecution claim succeed only if the entire principal action (as opposed to a particular allegation made in that action) was or is invalid;[50] (2) that the *loser* in the principal action not be able to relitigate under the guise of "malicious prosecution";[51] and (3) that the trier of fact not rule inconsistently for both the principal-action claimant

---

judgment on that claim, and the pleader is not stating any counterclaim under this rule.

(b) **Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

I do not consider whether a malicious prosecution counterclaim is mandatory or permissive.

[48] CR 18 provides in part:

(a) **Joinder of Claims.** A party asserting a claim to relief as an original claim, counterclaim, cross claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party.

(b) **Joinder of Remedies; Fraudulent Conveyances.** Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties.

[49] *Cf. State v. Bianchi*, 92 Wn.2d 91, 92, 593 P.2d 1330 (1979) (only State and accused may be parties in criminal case).

[50] *See Brin*, 89 Wn. App. at 821-22. In making this statement, I assume that the principal action alleges only one cause of action. I do not comment on "the possibility that a defendant could assert a malicious prosecution counterclaim based on an invalid severable cause of action included within a complaint asserting other valid severable causes of action." *Brin*, 89 Wn. App. at 821-22.

[51] *See* KEETON ET AL., § 119, at 874-75 (collateral attack cannot be permitted).

and the malicious-prosecution claimant.[52] Each of these purposes is as viable today as before 1977, and for that reason the cases since 1977 have continued to list termination as an essential element of a malicious prosecution claim.[53] I conclude that a malicious prosecution claimant may allege his or her claim in a principal action that is civil, though not in a principal action that is criminal; and that regardless of whether a malicious prosecution claimant alleges his or her claim in the principal action or a separate action, he or she can recover only if the principal action terminates on the merits in his or her favor.

### B

According to Baines, his malicious prosecution claim is based on two principal actions. One is the criminal action in which he entered *Alford* pleas, Pierce County cause number 97-1-04097-5. The other is the present civil action, Pierce County cause number 99-2-07724-1.

Baines cannot base a malicious prosecution claim on Pierce County cause number 97-1-04097-5. To show that a principal action terminated in his or her favor, a claimant must show that the principal action was abandoned or dismissed under circumstances in which "there was no compromise."[54] He or she may not show merely that the principal action was dismissed "as the result of a compromise or settlement of the parties," particularly where he or

---

[52] KEETON ET AL., § 119, at 874 n.44.

[53] *Hanson*, 121 Wn.2d at 558; *Gem Trading*, 92 Wn.2d at 962-63; *Stansfield v. Douglas County*, 107 Wn. App. 1, 10, 27 P.3d 205 (2001); *Hanson*, 100 Wn. App. at 286; *Brin*, 89 Wn. App. at 818; *McDaniel v. City of Seattle*, 65 Wn. App. 360, 366-67, 828 P.2d 81 (1992), *review denied*, 120 Wn.2d 1020 (1993); *Banks v. Nordstrom, Inc.*, 57 Wn. App. 251, 255-56, 787 P.2d 953, *review denied*, 115 Wn.2d 1008 (1990); *Peterson v. Littlejohn*, 56 Wn. App. 1, 9-10, 781 P.2d 1329 (1989); *Turngren v. King County*, 38 Wn. App. 319, 324, 686 P.2d 1110 (1984), *rev'd on other grounds*, 104 Wn.2d 293 (1985); *Orwick v. City of Seattle*, 37 Wn. App. 594, 601, 682 P.2d 954, *aff'd in part, rev'd in part*, 103 Wn.2d 249 (1984); *Olsen v. Fullner*, 29 Wn. App. 676, 677-78, 630 P.2d 492 (1981); *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 293, 612 P.2d 456 (1980).

[54] *Robertson v. Bell*, 57 Wn.2d 505, 511, 358 P.2d 149 (1961).

she induced or effected that disposition.[55] Because Baines'
*Alford* plea was a "compromise or settlement of the par-
ties,"[56] he cannot prove that Pierce County cause number
97-1-04097-5 terminated on the merits in his favor, and he
cannot seek damages based on that action.

It is premature to decide whether Baines can base a
malicious prosecution claim on the civil principal action,
Pierce County cause number 99-2-07724-1. Because that
action has yet to be tried, we cannot yet know whether it
will terminate in Clark's or Baines' favor. If the case is tried
to a jury and a party so requests, the trial court should
instruct the jury not to consider Baines' malicious prosecu-
tion claim unless the jury first determines that Baines is
not liable to Clark. Insofar as the termination element is
concerned, summary judgment was proper to the extent
Baines seeks damages based on the criminal principal
action, but improper to the extent Baines seeks damages
based on the civil principal action.

## II. PROBABLE CAUSE ELEMENT

The probable cause element turns on three propositions.
(A) Clark has probable cause only if she honestly and
truthfully reported what occurred between her and Baines.
(B) This record does not show whether Clark reported
honestly and truthfully. (C) Accordingly, summary judg-
ment was improper insofar as Baines claims damages from
the civil principal action.

### A

As the discussion below will show, probable cause is
different for an informant than for a decision-maker. The
informant supplies facts. The decision-maker uses those

---

[55] *Robertson*, 57 Wn.2d at 511; *see also* KEETON ET AL., § 119, at 875 (if principal
action terminates "by reason of a compromise into which [the malicious-prosecu-
tion claimant] has entered voluntarily, there is no sufficient termination in favor
of" that claimant) (footnote omitted).

[56] *Robertson*, 57 Wn.2d at 511.

facts as a basis for taking action. Clark is an informant here, for she is supplying facts about what happened between her and Baines. As a result, the initial question here is when an informant (as opposed to a decision-maker) has probable cause.

The Washington Supreme Court has addressed this question in at least three cases. They are *Peasley v. Puget Sound Tug & Barge Co.,*[57] *Bender v. City of Seattle,*[58] and *Turngren v. King County.*[59]

In the first case, Peasley was storing logs that belonged to Foss. Cary and two other men began to remove the logs without Peasley's permission. Peasley accosted them, and they failed to show authority from Foss. Thus, Peasley ran them off his property.

Cary reported the incident to the county prosecutor. Based on that report, the prosecutor charged Peasley with "the crime of interfering with, preventing, or obstructing the search for, and the retaking of, branded logs."[60] Peasley was arrested, tried, and acquitted.

Peasley then sued Cary for malicious prosecution.[61] The jury returned a verdict for Peasley, but the trial court granted Cary's motion for judgment n.o.v. Peasley appealed to the Supreme Court, which reasoned:

> If it clearly appears that the defendant, before instituting criminal proceedings against the plaintiff, made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him, and that the prosecuting attorney thereupon preferred a criminal charge and caused the arrest of the accused, probable cause is thereby established as a matter of law . . . . [T]he same rule prevails where such

---

[57] 13 Wn.2d 485, 125 P.2d 681 (1942).

[58] 99 Wn.2d 582, 664 P.2d 492 (1983).

[59] 104 Wn.2d 293, 705 P.2d 258 (1985).

[60] *Peasley*, 13 Wn.2d at 488.

[61] Peasley also sued Cary's employer, Puget Sound Tug & Barge Company, but that is not material here.

disclosure was made to a competent practicing attorney, and the criminal prosecution was instituted upon his advice.

> A corollary to this rule is that if any issue of fact exists, under all the evidence, as to whether or not the prosecuting witness did fully and truthfully communicate to the prosecuting attorney, or to his own legal counsel, all the facts and circumstances within his knowledge, then such issue of fact must be submitted to the jury with proper instructions from the court as to what will constitute probable cause, and the existence or nonexistence of probable cause must then be determined by the jury.[62]

Concluding that the record showed a genuine issue of fact on whether Cary had made a full and fair disclosure to the prosecutor, and that the trial court had correctly submitted the case to the jury, the Supreme Court reinstated the verdict.

In *Bender*,[63] Johnson was arrested for burglary. Hoping to obtain leniency, Johnson told Vanderlaan, a Seattle police detective, that he had stolen two rings in a different burglary; that he had sold the rings to Bender (whom Vanderlaan knew to be the owner of a Seattle jewelry store); that Bender purchased the rings knowing they were stolen; and that Johnson "had sold stolen property to Bender on prior occasions."[64] Bender admitted purchasing the rings but denied knowing they were stolen.

Vanderlaan truthfully reported the foregoing facts to a deputy prosecutor. He neglected to report, however, a number of other facts. Vanderlaan did not report "that he [had] investigated Johnson's allegations of prior transactions at Bender's store" but had found "no evidence of such prior transactions."[65] Vanderlaan did not report that Bender had "offered to produce witnesses and other proof to corroborate his story," but that he, Vanderlaan, had declined the offer

---

[62] *Peasley*, 13 Wn.2d at 499-500 (citations omitted); *see also Robertson*, 57 Wn.2d at 510.

[63] *Bender*, 99 Wn.2d 582.

[64] *Bender*, 99 Wn.2d at 585.

[65] *Bender*, 99 Wn.2d at 595-96.

"because he simply did not believe Bender."[66] Vanderlaan did not report that a polygraph had not been given despite Bender's offer to take one and another detective's recommendation that one be given. Vanderlaan did not report that Johnson had taken a polygraph during which he showed "some deception as to one relevant question."[67] Vanderlaan did not report that Johnson had stated, during the polygraph, that "he had 'shot up with heroin' about 1 hour prior to the sale to Bender"[68] and that he "felt 'spaced out' at the time of the sale" to Bender.[69] Vanderlaan did not note "Bender's immediate compliance with the reporting laws which require jewelers to report purchases to the police," nor did he furnish copies of documents showing Bender's compliance "with regard to the purchase of goods from Johnson."[70] Vanderlaan did not report that the price Bender had paid to Johnson, which seemed "disproportionate" when "compared to the actual value of the rings, was not at all unusual in the second-hand jewelry market in Seattle with respect to legitimate transactions."[71]

Based on Vanderlaan's report, the deputy prosecutor filed two counts of possession of stolen property. Bender was arrested, but the case was dismissed when Johnson refused to testify.

Bender then sued Vanderlaan for malicious prosecution.[72] The evidence at the ensuing trial was " 'in sharp conflict [as to] whether the officers, in good faith, made a full and fair disclosure' " to the prosecutor " 'of all material

---

[66] *Bender*, 99 Wn.2d at 585.

[67] *Bender*, 99 Wn.2d at 586.

[68] *Bender*, 99 Wn.2d at 586.

[69] *Bender*, 99 Wn.2d at 586.

[70] *Bender*, 99 Wn.2d at 596.

[71] *Bender*, 99 Wn.2d at 596.

[72] Bender also sued Seattle as Vanderlaan's employer, but that is not material here.

facts known to them.' "[73] The prosecutor testified that he " 'would not have filed the case' " if he had known what Vanderlaan knew but had not revealed.[74] The jury returned a verdict for Bender, and Vanderlaan appealed to the Supreme Court.[75] After reiterating the language from *Peasley* quoted above, the Supreme Court said:

> This language in *Peasley* makes it unmistakably clear that if a factual issue as to probable cause or malice exists, the question must be submitted to the jury. The credibility of witnesses and the weight to be given the evidence are matters that rest within the province of the jury; and, even if the court were convinced that a wrong verdict had been entered, it should not substitute its judgment for that of the jury so long as there was evidence which, if believed, would support the verdict rendered.[76]

Concluding that the evidence was sufficient to show Vanderlaan had failed "to disclose information bearing on Johnson's credibility,"[77] the Supreme Court affirmed the judgment.

In *Turngren v. King County*,[78] Leavitt brought a gun to the police. He told the police that he thought the gun was stolen and that he had purchased it from Smith. He also told the police that "Smith was 'a downright liar' " who could not be trusted.[79] The officers verified that the gun was indeed stolen.

The police already knew Smith, for they were currently using him as an informant. Detective Niehl, Smith's supervisor and handler, knew that Smith had criminal and juvenile records and was presently on probation.

---

[73] *Bender*, 99 Wn.2d at 595.

[74] *Bender*, 99 Wn.2d at 596.

[75] More precisely, the Supreme Court reversed the Court of Appeals, which had earlier reversed the trial court. The Court of Appeals decision is not material here.

[76] *Bender*, 99 Wn.2d at 594-95.

[77] *Bender*, 99 Wn.2d at 596.

[78] *Turngren*, 104 Wn.2d 293.

[79] *Turngren*, 104 Wn.2d at 297.

Niehl and Deputy Rutherford contacted Smith to investigate what Leavitt had said. Smith said he had heard secondhand "where other firearms were located in the Juanita-Kirkland area."[80] After telling Smith to find out where the firearms were, Niehl and Rutherford drove him to the Juanita area and dropped him off.

The next day, Smith called to allege he had located the firearms. They were in a house occupied by three young males, including "a Hell's Angels warlord named 'Keith.'"[81] He had entered the house and smoked dope with a biker. While inside, he had seen automatic weapons and explosives, plus three motorcycles parked in the living room.

When Niehl and Rutherford checked out the address Smith had given, they "learned that the house and the car outside it were owned by an Elmer Turngren, who was retired."[82] Turngren "lived in the house with his wife, . . . a former employee of the Kirkland Police Department."[83]

Without investigating further, Niehl and Rutherford prepared an affidavit for a search warrant. The affidavit reiterated Smith's allegations about the house and stated that Smith "had given more than 10 reports on criminal activity . . . which were personally verified by Detective Niehl."[84] The affidavit did not say anything negative about Smith's credibility, or anything "about what had been learned about the Turngrens."[85]

Based on the affidavit, a magistrate issued a search warrant for the Turngrens' house. Before the warrant was served, according to a statement Smith made much later, Smith told the officers that the warrant was for the wrong house. The officers served the warrant and found nothing illegal.

---

[80] *Turngren*, 104 Wn.2d at 297.

[81] *Turngren*, 104 Wn.2d at 298.

[82] *Turngren*, 104 Wn.2d at 298.

[83] *Turngren*, 104 Wn.2d at 298.

[84] *Turngren*, 104 Wn.2d at 298.

[85] *Turngren*, 104 Wn.2d at 298.

The Turngrens sued Niehl and Rutherford for malicious prosecution.[86] The trial court granted a defense motion for summary judgment, but the Supreme Court reversed. Citing *Peasley* and *Bender*, the Supreme Court held that whether the two officers had fully and fairly reported to the magistrate was a question of fact that could not be resolved on summary judgment.

As can be seen, *Peasley*, *Bender*, and *Turngren* each involved at least one informant, as well as a decision-maker. In *Peasley*, the informant was Cary, and the decision-maker was the prosecutor. In *Bender*, the informants were Johnson and Vanderlaan, and the decision-maker was the prosecutor. In *Turngren*, the informants were Leavitt, Smith, Niehl, and Rutherford, and the decision-maker was the magistrate who issued the warrant.

As can be seen, *Peasley*, *Bender*, and *Turngren* each hold that whether an informant has "probable cause" depends on whether he or she "ma[kes] to the [decision-maker] a full and fair disclosure, in good faith, of all the material facts known to him"; or, in alternative terms, on whether he or she "fully and truthfully communicate[s] to the [decision-maker] all the facts and circumstances within his [or her] knowledge."[87] It does not matter whether the informant knows a lot or a little,[88] so long as the informant "fully and truthfully communicates" whatever it is that he or she honestly and in good faith believes. Conversely, the informant can be liable if he or she lies or otherwise warps the truth in bad faith.

As can be seen, the test for whether an *informant* has probable cause is different from the test for whether a *decision-maker* has probable cause. *Bender* states, and

---

[86] The Turngrens also sued Niehl's and Rutherford's employers, but that fact is not important here.

[87] *Peasley*, 13 Wn.2d at 499-500.

[88] As a result, "probable cause" is something of a misnomer when applied to an informant who is not also the decision-maker.

other cases hold,[89] that the test for whether a decision-maker has "probable cause" is whether "the facts and circumstances within [his or her] knowledge and of which he [or she] has reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in a belief that an offense has been or is being committed."[90] Unlike an informant then, a decision-maker does not have "probable cause" merely because he or she fully and fairly discloses whatever it is that he or she knows; instead, he or she must know enough "to warrant a [person] of reasonable caution in a belief that an offense has been or is being committed."

The *Restatement (Second) of Torts* confirms this dichotomy between the test for an informant and the test for a decision-maker. Referring to cases in which the principal action is criminal, and to a citizen informant in such cases as "a private prosecutor," the *Restatement* comments:

> c.  *Belief in guilt of accused.* A private prosecutor can not have probable cause for initiating criminal proceedings against another if he does not believe that the accused was guilty of the crime charged against him. If he does not so believe, it is immaterial that the facts of which he had knowledge or belief were such that reasonable men might have regarded them as proof of the guilt of the accused. It is only when the prosecutor honestly but mistakenly believes the accused to be guilty that the question whether his belief was based on reasonable [i.e., objective] grounds becomes material.[91]

Referring to cases in which the principal action is civil, the *Restatement* further comments that a person who reports

---

[89] *Furfaro v. City of Seattle*, 144 Wn.2d 363, 379, 27 P.3d 1160 (2001); *State v. Graham*, 130 Wn.2d 711, 723-24, 927 P.2d 227 (1996) ("probable cause is the objective standard by which the reasonableness of an arrest is measured" and "exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed"); *State v. Fricks*, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979); *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974).

[90] *Bender*, 99 Wn.2d at 597.

[91] RESTATEMENT (SECOND) OF TORTS § 662 cmt. c, at 424 (1977).

facts to his or her civil attorney has "probable cause" for malicious prosecution purposes if, "in reliance upon the advice of counsel, sought in good faith and given *after full disclosure of all relevant facts within his knowledge and information*," he or she "reasonably believes in" the facts upon which the claim is based.[92]

Dean Prosser agrees with the *Restatement*. He states:

> Probable cause has been defined as "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense." ... *It includes first of all an honest belief in the guilt of the accused,* since the reasonable man will not prosecute another whom he does not believe to be guilty.[93]

At least some other jurisdictions also agree.[94]

Based on these authorities, I conclude that an informant has probable cause if he or she (1) honestly and in good faith believes the facts that he or she alleges and (2) truthfully communicates those facts to the probable-cause decision-maker. Conversely, I conclude that an informant lacks probable cause if he or she lies (i.e., if he or she intentionally misrepresents what he or she honestly believes), or if he or she otherwise, intentionally and in bad faith, materially warps the truth. Here then, Clark had probable cause to bring Pierce County cause number 99-2-07724-1 if she honestly believed the allegations in her complaint; but she lacked probable cause if she materially and in bad faith lied in her complaint.

---

[92] RESTATEMENT (SECOND) OF TORTS § 675, at 457-58 (1977) (emphasis added).

[93] PROSSER, § 113, at 860 (footnotes omitted).

[94] *E.g., Douris v. County of Bucks*, 2001 U.S. Dist. LEXIS 9282, at *37, 2001 WL 767579, *12 (E.D. Pa. July 3, 2001) ("probable cause depends upon: '(1) whether the defendant honestly believed that the accused committed the crime for which the accused was prosecuted (the subjective component); and (2) whether the defendant reasonably believed that the accused was guilty of the crime charged (the objective component)'") (quoting *Gilbert v. Feld*, 842 F. Supp. 803, 815 (E.D. Pa. 1993)); *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 973 (Miss. 2001) ("Probable cause requires both (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such belief.").

## B

Whether Clark honestly believed the allegations in her complaint is a question of fact that can be resolved on summary judgment only if the record is so clear that reasonable minds could not differ.[95] Clark bears the "initial burden" of showing that reasonable minds could not differ.[96] As already noted, we must take the facts and reasonable inferences in the light most favorable to Baines.[97]

The trial court in this civil action, Pierce County cause number 99-2-07724-1, did not determine that Clark honestly believed her allegations. In granting summary judgment, it had no way to assess her state of mind.[98]

The majority attempts to fill this void with the criminal judgment for fourth degree assault and with what it calls Baines' "admissions." Accordingly, I analyze three questions: (1) Did the *Alford* plea court determine that Clark honestly believed her allegations? (2) Did Baines admit that? (3) Does this record otherwise show that?

## 1

The first question is whether the *Alford* plea court determined that Clark honestly believed her allegations. The answer is no. Every plea must rest on an adequate factual basis.[99] An *Alford* plea has such a basis if the State's evidence is *sufficient to support a finding* of each element of

---

[95] *Bulman v. Safeway, Inc.*, 144 Wn.2d 335, 351, 27 P.3d 1172 (2001); *Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 777, 15 P.3d 640 (2001).

[96] *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[97] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 429, 38 P.3d 322 (2002); *Miller v. Jacoby*, 145 Wn.2d 65, 70-71, 33 P.3d 68 (2001).

[98] *See, e.g., Brower v. Ackerley*, 88 Wn. App. 87, 89, 943 P.2d 1141 (1997) (court deciding summary judgment "do[es] not evaluate the credibility of the witnesses"), *review denied*, 134 Wn.2d 1021 (1998); *Morinaga v. See Vue*, 85 Wn. App. 822, 828, 935 P.2d 637 (same), *review denied*, 133 Wn.2d 1012 (1997).

[99] CrR 4.2(d).

the crime charged.[100] When determining whether the evidence meets this test, a court must take the evidence in the light most favorable to the State[101]—which is to say that the court must *assume* the credibility of any State's witness whom a trier of fact *could* find credible. Accordingly, the court that took Baines' *Alford* pleas decided only that Clark's allegations, *if* honestly and truthfully made, were sufficient to support two counts of fourth degree assault. It did not assess Clark's credibility, or whether she was honestly and truthfully alleging her version of the facts.[102] It had no occasion to consider, and it did not consider, whether Clark had probable cause.[103]

## 2

The next question is whether Baines admitted that Clark honestly believed her allegations. If he did, it was when he entered his *Alford* plea. Thus, I examine the statements he made at that time.

When Baines entered his *Alford* plea, he said he was pleading guilty (1) even though he maintained his innocence, (2) because he "desire[d] to take advantage of the State's recommendation", and (3) "because after reviewing

---

[100] *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976). The *Newton* court said:

> The factual basis requirement of CrR 4.2(d) does not mean the trial court must be convinced beyond a reasonable doubt that defendant is in fact guilty. "It should be enough if there is sufficient evidence for a jury to conclude that he is guilty." *United States v. Webb*, 433 F.2d 400, 403 (1st Cir. 1970). The standard in *Webb* was met in the instant case. The evidence presented . . . was sufficient evidence from which a jury *could* find beyond a reasonable doubt [that] defendant . . . was . . . guilty of at least second degree murder.

(Emphasis added.)

[101] *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001); *State v. Davis*, 141 Wn.2d 798, 868, 10 P.3d 977 (2000).

[102] Indeed, the *Alford* plea court could not have assessed Clark's credibility, or the honesty and truthfulness of her reporting, for she did not testify in the *Alford* plea proceeding.

[103] *Hanson* is distinguishable for this reason. In *Hanson*, the principal action was tried, and the trier of fact *evaluated and accepted* the credibility of those who later became malicious prosecution defendants. In this case, no one has yet evaluated Clark's (or Baines') credibility.

the facts and the law with [his] attorney [he] believe[d] a jury would find [him] guilty." I will call these his first, second, and third statements, respectively.

Baines' first statement was not an admission that Clark honestly believed her allegations. It described his position—that he was innocent—and it implied that Clark was *not* reporting honestly. It did not imply that Clark *was* reporting honestly.

Baines' second statement was not an admission that Clark honestly believed her allegations. He was saying that he wanted to plead guilty to avoid the risk of a life sentence. He was not saying that he had committed the crime charged, that Clark was telling the truth, or even that Clark honestly believed her allegations.

Baines' third statement was not an admission that Clark honestly believed her allegations. He was describing what a jury could do, *not* what he believed about Clark's state of mind. And even if he were describing Clark's state of mind, his statement obviously supports two competing inferences: A jury might convict him because Clark honestly believed her allegations, or a jury might convict him *even though Clark was lying*. The latter inference most favors him, and it is one we must accept for purposes of this summary judgment proceeding.[104]

To reach its conclusion that Baines admitted Clark had probable cause, the majority takes his statements in the light most favorable to *Clark*. That is improper, for in this summary judgment proceeding we are obligated to take all the evidence, including his statements, in the light most favorable to *him*. If the majority were to fulfill that obligation, it would conclude that his statements may be factors for a trier of fact to consider, but that his statements do *not* show probable cause so clearly that reasonable minds could not differ.

---

[104] *Bulman*, 144 Wn.2d at 351; *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

The next question is whether the record otherwise shows that Clark honestly believes her allegations. The factual record on appeal is limited to documents from the earlier criminal case, including (1) the "Statement of Arresting Officer and Preliminary Finding of Probable Cause,"[105] (2) the "Prosecutor's [S]tatement Regarding Amended Information," (3) the "Statement of Defendant on Plea of Guilty," (4) a transcript of the proceeding at which Baines entered his *Alford* pleas, and (5) the criminal court's judgment and sentence.[106] Remarkably, the factual record does not contain a sworn affidavit or declaration from either Clark or Baines.[107]

These documents do not show that Clark honestly believed her allegations; they show what her allegations were, but they show nothing about her state of mind in making them. Nor do these documents include, for reasons already discussed, an admission by Baines that Clark honestly believed her allegations; indeed, they show that he maintained his innocence even while pleading guilty. In the end then, these documents support either of two reasonable but competing inferences. One inference is that Baines pleaded guilty to fourth degree assault because Clark honestly believed and was truthfully reporting that he had sexually assaulted her. Another, contrary inference is that Baines pleaded guilty to fourth degree assault because, even though Clark was not being honest and truthful, he wanted

---

[105] As stated previously, no one contends that this finding has preclusive effect in this civil action. It was preliminary and ex parte. Baines did not have an opportunity to appear and be heard. It cannot have triggered res judicata or collateral estoppel.

[106] CP at 55.

[107] If Clark had submitted an affidavit or declaration and Baines had responded with a contravening one, it would now be clear that a genuine issue of material fact remains to be tried. If Clark had submitted such an affidavit or declaration to which Baines failed to respond, Clark might now be entitled to summary judgment. But where Clark has not submitted an affidavit or declaration, she has not borne, as the rest of my discussion points out, "the initial burden of showing the absence of an issue of material fact." *Young*, 112 Wn.2d at 225.

to trade the risk of a life sentence for a recommendation of one day in jail. Accordingly, this record does not support summary judgment insofar as Baines seeks damages from the civil principal action.

I make four additional observations before closing. First, the majority is really applying collateral estoppel when it holds that the *Alford* plea court determined probable cause and that such determination precludes Baines from litigating that issue in this civil case.[108] The majority errs in doing that for several reasons. (1) Instead of asserting collateral estoppel, Clark disclaims any reliance on it. She states in her brief that Baines "has attempted to cloud the issues . . . by raising . . . estoppel, but . . . this red herring should be ignored."[109] (2) Nothing in Washington law supports the application of collateral estoppel to an *Alford* plea. The cases uniformly hold that a settlement or consent decree lacks preclusive effect.[110] "The reason is that 'the parties could settle for myriad reasons not related to the resolution of the issues they are litigating.' "[111] An *Alford* plea is much like a settlement or consent decree, and thus Division One of this court has held on at least three occasions that an *Alford* plea generally lacks preclusive

---

[108] The majority belatedly concedes this in the last paragraph before its conclusion, in the second sentence of its conclusion, and in its last two footnotes.

[109] Br. of Resp't at 2.

[110] *See Dunning v. Paccerelli*, 63 Wn. App. 232, 242, 818 P.2d 34 (1991) (consent judgments "are not . . . ordinarily given issue preclusion effect"); *Krikava v. Webber*, 43 Wn. App. 217, 222, 716 P.2d 916 (collateral estoppel did not apply because prior actions was dismissed based on a settlement agreement), *review denied*, 106 Wn.2d 1010 (1986); *Marquardt v. Fed. Old Line Ins. Co.*, 33 Wn. App. 685, 689, 658 P.2d 20 (1983) ("collateral estoppel should not be applied to judgments of dismissal, even when based on settlement agreements, since the parties could settle for myriad reasons not related to the resolution of the issues they are litigating"); *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 14 Wn. App. 557, 562, 544 P.2d 763 (1975) (collateral estoppel did not apply to stipulated findings and conclusions entered in prior action), *review denied*, 86 Wn.2d 1011 (1976); *see also* Sheldon R. Shapiro, *Modern Views of State Courts As to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect*, 91 A.L.R.3d 1170 (1979).

[111] *Dunning*, 63 Wn. App. at 242 (quoting *Marquardt*, 33 Wn. App. at 689).

effect.[112] The Supreme Court has even stated that "due process prohibits an *Alford* plea from being the basis for collateral estoppel in a subsequent action."[113] Even the majority itself notes that the cases "limit collateral estoppel analysis to issues actually fully litigated at trial."[114] Baines' *Alford* plea was analogous to a consent decree or settlement, and the majority errs by assigning it preclusive effect. (3) Finally, as already noted, no tribunal has previously litigated whether Clark reported honestly and truthfully, and thus no tribunal has previously litigated the issue of probable cause.

Second, the issues of probable cause and malice are one and the same on these facts, despite the majority's implication to the contrary. Clark personally observed what did or did not happen between her and Baines. She did not acquire what she knows from Baines' "admissions." If she is truthfully reporting what she knows, she is acting with probable cause and without malice. If she is lying, she is acting without probable cause and with malice. There are no other possibilities on these facts, and nothing is added by the majority's single paragraph on malice.

Third, *Peasley*, *Bender*, and *Turngren* cannot be distinguished because the plaintiffs in those cases were never convicted. What is material is not whether the plaintiffs were convicted, but whether the earlier convicting court made a final and binding determination that the informant reported honestly and truthfully. No criminal court did that in *Peasley*, *Bender*, or *Turngren*, no criminal court has done that here, and the facts in all four cases are parallel.

Fourth and last, the majority's assertion that "[t]he dissent would allow an action for malicious prosecution in the face of an unchallenged judgment and sentence" merely

---

[112] *Falkner v. Foshaug*, 108 Wn. App. 113, 122-23, 29 P.3d 771 (2001); *N.Y. Underwriters Ins. Co. v. Doty*, 58 Wn. App. 546, 550, 794 P.2d 521 (1990); *Safeco Ins. Co. of Am. v. McGrath*, 42 Wn. App. 58, 63, 708 P.2d 657 (1985), *review denied*, 105 Wn.2d 1004 (1986).

[113] *In re McLendon*, 120 Wn.2d 761, 770, 845 P.2d 1006 (1993).

[114] Majority opinion at 29, n.11.

highlights, and establishes beyond question, that the majority is applying collateral estoppel improperly.[115]

For all the foregoing reasons, I would affirm insofar as Baines seeks damages based on Pierce County cause number 97-1-04097-5, but reverse insofar as Baines seeks damages based on Pierce County cause number 99-2-07724-1.

Review granted at 149 Wn.2d 1009 (2003).